**Donald BROWN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 45S00–9001–CR–2.**

Supreme Court of Indiana.

June 6, 1991.

Marce Gonzalez, Jr., Appellate Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of two counts of Murder. On one count he received forty (40) years enhanced by twenty (20) years, and on the other count, he received a forty (40) year sentence, the sentences to run consecutively.

The facts are: Yvonne Bostic, one of the victims in this case, resided with Flora Hughes in Gary. Yvonne resided in the upper level of the home with her eight-year-old son James and her fourteen-month-old daughter LaDonna. Flora and her two children resided in the basement of the house. A large hole in the floor enabled the women to converse with each other.

On the afternoon of November 11, 1988, Yvonne telephoned James Bostic, Sr., her father, and told him that appellant had beaten her and ejected her from the house. Bostic transported Yvonne to her home and inspected the premises where he found appellant hiding in the children's bedroom. He ordered the defendant to gather his belongings and leave the premises. Before appellant left, however, he stated that he would be back.

On November 13 at approximately 7:00 p.m., Bostic called on his daughter at her home and gave her a .22 caliber handgun for her protection. On November 14 at approximately 12:30 a.m., Flora heard someone knock on Yvonne's front door. She heard Yvonne say, "What do you want, Donald?" She heard appellant respond that he came to get his things. Flora then heard Yvonne and appellant arguing. She heard sounds of a struggle and Yvonne crying, "No, Donnie, no." She then heard Yvonne say, "Get the gun, James, help your momma." She heard the light steps of a child running across the floor, followed by the heavier steps of an adult. She heard a gunshot and Yvonne cried out, "My baby, you killed my baby." She then heard Yvonne moaning and crying out for her father and for Flora. Flora then heard a second gunshot and there was silence. She heard appellant walk by the hole in the floor and call her name, but she was afraid to respond. She then heard him go to the bathroom and turn on the water. Appellant left the house and Flora heard LaDonna, the baby, crying. She went upstairs, saw Yvonne's body and went to the neighbor's house and called the police.

Police found the partially-clad body of Yvonne covered with blood and a bloodied meat cleaver on the floor next to Yvonne's body. They found James' body on one of the beds in the children's room. An autopsy revealed that Yvonne suffered a fractured larynx, blunt force injuries, and mul-

tiple stab wounds including five stab wounds in the head, eleven stab wounds in the chest, and four stab wounds in the back. The stab wounds penetrated the heart, liver, stomach, and spleen. Yvonne also suffered a gunshot wound on her arm and a "contact" gunshot wound in the head. All of these wounds contributed to her death. An autopsy revealed that James was killed by a "contact" gunshot wound in the left temple.

Appellant claims reversible error occurred when the prosecuting attorney made improper remarks and engaged in misconduct during the closing argument. During the argument, the prosecuting attorney stated that if James Bostic had survived that night and the State of Indiana had called him to testify, "What do you think he would have said?" At this point, defense counsel objected; the court, however, permitted the prosecutor to continue his argument. When the prosecutor stated, "What would he have said, ladies and gentlemen? What would he have said? I submit to you what he would have said on that stand—." At this point, defense counsel again objected and the court admonished the prosecutor that he was getting into speculation.

At another point in his argument, the prosecutor, in describing Yvonne's multiple injuries and painful death, stated, "because it wasn't quick and deliberate like Mr. Holcomb wished that it was." At this point, Mr. Holcomb, the defense attorney, objected and the prosecutor voluntarily withdrew his remark. At still another time, the prosecuting attorney alluded to a statement appellant had made prior to trial as to what Yvonne had done to him. Appellant takes the position that inasmuch as the State had filed a motion in limine to prevent defendant from referring to his pretrial statement, the State should not have been permitted to allude to such statement in its final argument.

When improper argument is alleged to have occurred, the correct procedure is to request an admonishment. *Dresser v. State* (1983), Ind., 454 N.E.2d 406. If, after an admonishment, a defendant is still not satisfied, the proper procedure is to make a motion for a mistrial. *Id.* The failure to request an admonishment or move for a mistrial results in a waiver of the issue. *Brewer v. State* (1983), Ind., 455 N.E.2d 324. In the case at bar, appellant did object to the conduct of the prosecuting attorney. Also, the judge admonished the jury to disregard the comment about the defendant's statement and questioned each juror as to their ability to disregard the statement of the prosecutor. It is true the prosecutor's remarks were improper, but in fact, the trial court did stop the prosecutor at various times during his argument and admonish the jury. In view of the overwhelming evidence against appellant, we cannot say that the misconduct of the prosecutor amounts to reversible error in view of the lack of a request for admonishment or a mistrial and the fact that the trial judge did admonish the prosecutor. We find no reversible error.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.