**Michael Timothy ROBINSON, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

**No. 48S00–9610–CR–00628.**

Supreme Court of Indiana.

April 3, 1998.

550

Robert W. Rock, Anderson, for Appellant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Justice.

Appellant Michael Timothy Robinson was charged with murder, Ind.Code Ann. § 35–42–1–1(1) (West Supp.1997), and robbery, a class A felony, Ind.Code Ann. § 35–42–5–1 (West 1986). A jury found him guilty of both crimes. The trial judge sentenced him to sixty-five years for murder and forty-five years for robbery, to be served consecutively. Robinson appeals his conviction and sentence. We affirm.

### Facts

Robinson and Michael Hobbs were both drug dealers in Elwood, Indiana. Hobbs supplied marijuana to Robinson. Over a period of months, Robinson made plans to murder Hobbs so that he could move up in the local drug trade and make more money.

On August 1, 1995, Robinson called his friend Donald Peters, told him to "come over," and said that Hobbs was coming over to sell them some marijuana. (R. 939). Robinson planned to kill Hobbs that night. Hobbs arrived at Robinson's house about 10:30 p.m. wearing a zippered pouch around his waist containing approximately $1,000 in cash. He also had a black duffel bag holding between six and seven pounds of marijuana in the back seat of his car. Robinson and Peters got into Hobbs' car, with Robinson in the backseat behind Hobbs, and Peters in the front passenger seat. (R. 944). Robinson carried a handgun and a pair of gloves with him. He tried to shoot Hobbs, but the gun jammed and misfired. Hobbs struggled to exit the car, but Robinson unjammed the gun and fired again, this time hitting Hobbs in the back of the neck. The single gunshot wound killed Hobbs.

Peters and Robinson drove Hobbs' car three miles from the site of the shooting, then dragged the body into a soybean field. Peters removed the zippered pouch from around Hobbs' waist. The two then left the body and drove to Peters' house, where they picked up Peters' car. With Peters following, Robinson drove Hobbs' car back out to the country. After transferring the duffle bag to Peters' car, they abandoned Hobbs' car and returned to Robinson's house to divide the cash and marijuana.

Police found Hobbs' car the next day, but his badly decomposed body was not found until three weeks later. Police were able to identify Hobbs' body through DNA testing.

### I. Prosecutorial Misconduct

Robinson claims the prosecutor engaged in misconduct by making prejudicial remarks in front of the jury. He also argues the prosecutor improperly withheld a videotape of a witness statement that was allegedly subject to a discovery order.

When we review claims of prosecutorial misconduct, we consider first whether the prosecutor committed misconduct and second, whether the alleged misconduct placed the defendant in a position of grave peril. *Willoughby v. State,* 660 N.E.2d 570, 582 (Ind.1996). "The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, rather than the degree of the impropriety of the conduct." *Id.*

*A. Improper Argument.* Robinson says the prosecutor made two varieties of improper comments in front of the jury. First, he claims the prosecutor made a series of remarks calculated to shift the burden of proof. For example:

> [Prosecutor]: Judge, we're getting way beyond the scope of my direct examination. [Defense counsel's] gonna have a chance to present his case later on. This is the State's turn to do that.

(R. 348.)

Robinson argues this remark improperly suggested that he was obligated to present evidence. He points to three other instances

in which the prosecutor made similar comments. (R. 413, 496, 918.)

Robinson claims, as a second type of improper argument, that the prosecutor disparaged him or his counsel in front of the jury, or suggested that the defense was trying to mislead the jury. (R. 489, 706, 708, 773, 1020–21, 1026, 1027, 1036.)

When improper argument of either type is alleged to have occurred, an objecting party should request an admonishment. *Brown v. State*, 572 N.E.2d 496, 498 (Ind. 1991). If, after an admonishment, the party is still not satisfied, the proper procedure is to move for a mistrial. *Id.* The failure to request an admonishment or move for a mistrial results in waiver of the issue. *Id.*

Robinson objected to only two of these allegedly improper remarks by the prosecutor. Even where Robinson objected at trial, he made no request for an admonishment, and thus, did not give the trial court an opportunity to strike the remarks and deflate any possible prejudicial effect. Accordingly, Robinson has waived the issue of prosecutorial misconduct with respect to all of the allegedly improper comments.

Robinson seeks to avoid this procedural forfeiture on the ground it constitutes fundamental error. It does not.

*B. Videotaped Witness Statement.* Robinson next claims that the prosecution committed misconduct by withholding the videotaped statement of State witness Angie Carmack, allegedly in defiance of a discovery order.

Pretrial statements made by State witnesses are discoverable provided (1) the witness whose statement is sought has testified on direct examination; (2) a substantially verbatim transcription of the statement is shown to be within the control of the prosecution; and (3) the statement relates to matters covered in the testimony in the present case. *Antrobus v. State*, 253 Ind. 420, 427, 254 N.E.2d 873, 876–77 (1970); *Vance v. State*, 640 N.E.2d 51, 58 (Ind.1994).

The State does not question Robinson's entitlement to Carmack's statement, but maintains it provided a copy of the videotape

to him. Robinson insists he never received a copy.

Robinson allegedly learned about the statement during trial, and promptly informed the court that he had not received a copy. However, he did not persist in his position. Instead, when the State asked that the parties resolve the issue outside the presence of the jury, Robinson appears to have complied with the judge's suggestion that it was unnecessary to do so, and moved on. (R. 785.) Robinson points to no other place in the record where he renewed his request for the statement, even during Angie Carmack's cross examination.

We conclude that Robinson acquiesced in cross-examining Carmack without first obtaining a copy of her pretrial statement and therefore did not preserve the issue for appellate review.

## II. Substantially Verbatim Witness Statement

Robinson argues the trial court erred in failing to order the State to turn over witness James Toby's statement that is set forth in a police report.

In general, police reports constitute work product of the prosecutor, and a trial court is powerless to order production of such reports. *Johnson v. State*, 584 N.E.2d 1092, 1103 (Ind.1992). Substantially verbatim witness statements, however, are subject to discovery. *Hicks v. State*, 544 N.E.2d 500, 504 (Ind.1989).

When a police report allegedly contains a verbatim witness statement interspersed with the officer's work product, "in-camera inspection by the trial court should permit the court to determine whether a document is essentially a verbatim statement and therefore discoverable or essentially a police report containing occasional quotations and thus privileged." *Crawford v. Superior Court of Lake County*, 549 N.E.2d 374, 376 (Ind.1990).

Upon a request by defense counsel that the police report be produced, the trial court reviewed the report and determined that it contained the investigating officer's

impressions of what Mr. Toby said, not his substantially verbatim statement. (R. 278). The trial court therefore denied counsel's request that the prosecution be ordered to produce a copy. (R. 281).

We agree that the report contains the officer's impressions rather than the witness' substantially verbatim statement.[1] The report does not purport to set forth Mr. Toby's actual words reduced to writing as he spoke, is not in the first person, and contains more than Mr. Toby's words. *See Crawford,* 549 N.E.2d at 376 (discoverable witness statements typically represent the witness' words as he spoke them, contain little but those words, and are written in the first person). Therefore, we find no error in the trial court's ruling.

### III. Hearsay Statements

Robinson next argues that the trial court erred by allowing inadmissible hearsay into evidence.

 The Indiana Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind.Evidence Rule 801. Hearsay is generally not admissible in evidence. Evid.R. 802. However, errors in the admission of evidence, including hearsay, are to be disregarded as harmless unless they affect the substantial rights of a party. Ind.Trial Rule 61; *McClain v. State,* 675 N.E.2d 329, 331 (Ind.1996). In determining whether an evidentiary ruling affected an Robinson's substantial rights, we assess the probable impact of the evidence on the jury. *Id.* Admission of hearsay is not grounds for reversal where it is merely cumulative of other evidence admitted. *Id.* at 331–32.

 Robinson claims that the trial court erred in allowing hearsay to be admitted on five occasions during trial. Four of these hearsay statements were later admitted as testimony by the declarants. The fifth statement was confirmed by Robinson himself on the witness stand.

Because all of the alleged hearsay was merely cumulative of other evidence properly admitted, we see no grounds for reversal.

### IV. Photographs

Robinson claims that State Exhibits 69 through 72, photographs of the victim's decomposed body, should not have been admitted into evidence because they were too prejudicial.

 Photographs are generally admissible if they depict something a witness would be permitted to describe during testimony. *Phillips v. State,* 550 N.E.2d 1290, 1299 (Ind.1990). Admission of photographs lies within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion. *Isaacs v. State,* 659 N.E.2d 1036, 1043 (Ind.1995). The fact that a photograph may depict gruesome details of a crime is not a sufficient basis for excluding it. The question is whether the probative value of the photograph outweighs its prejudicial effect. *Id.*

 Robinson claims unfair prejudice resulting from admission of the photographs outweighed their probative value because of their especially gruesome nature. We disagree.

The photographs depict Hobbs' decomposed body, apparently partially eaten by animals. Forensic Pathologist Dr. Dean Hawley testified that the body found in the soybean field was so decomposed that an ordinary autopsy to determine identity and cause of death could not be performed. Forensic DNA analyst Todd Bille described the process by which he concluded that it was indeed Hobbs' body. Thus, any prejudice from the admission of the photographs alone was outweighed by their probative value in showing why the State had to resort to extraordinary methods to identify the body, and that the body was identified as Hobbs.

Robinson further contends that admission of the gruesome photographs was unfairly prejudicial because they were cumulative of images already shown to the jury in a video-

---

1. Despite Robinson's request to the trial court, the actual police report was not admitted in evidence. The report is nevertheless available for our review because the trial court read the relevant portion into the record outside the presence of the jury. (R. 276–77).

tape of the crime scene. Robinson did not object to admission of the videotape.

■ While allowing the photographs in evidence after the videotape may have been unnecessary to illustrate the witness' testimony, we find no reversible error. Errors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of a party, as measured by the probable impact of the evidence on the jury. In light of the other evidence of guilt in this case, we find it highly improbable that the photographs had any impact on the jury's decision.

## V. Sufficient Evidence for Robbery

Robinson argues that he could not be properly convicted of robbery because "[a] dead man cannot be robbed." (Appellant's Br. at 35.) Robbery is committed when "[a] person [ ] knowingly or intentionally takes property from another person ... by using or threatening the use of force on any person...." Ind.Code Ann. § 35–42–5–1 (West 1986). Robinson notes that the State was obligated to prove that the property was taken from a "person." The criminal code defines "person," by reference to the definition of "human being," as "an individual who has been born and is alive." Ind.Code Ann. § 35–41–1–22 (West Supp.1997); Ind.Code Ann. § 35–41–1–14 (West 1986). Because the evidence shows Hobbs was dead at the time the property was taken, Robinson contends the State did not prove he took property from a "person."

■ In addressing the issue of sufficiency of the evidence, we affirm if, "considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that defendant was guilty beyond a reasonable doubt." *Paul v. State,* 612 N.E.2d 1060, 1062 (Ind.1993).

■ The record contains abundant evidence that the taking of Hobbs' property was effectuated by the use of force against him

while he was still alive. That Robinson waited until after Hobbs' death actually to take the property is of no moment.[2]

## VI. Sentencing

Robinson next argues that the trial court used one improper aggravating circumstance in sentencing him. Because the court based the enhanced sentence on two additional, valid aggravating factors, we see no grounds for relief.

The crime of murder carries a presumptive fifty-five year sentence, which may be enhanced by ten years due to aggravating circumstances. Ind.Code Ann. § 35–50–2–3(a) (West Supp.1997). In this case, the trial judge found the following aggravating factors and enhanced the presumptive sentence by ten years: (1) that the offense was drug related; (2) that the homicide had been planned over a period of time; and (3) that a lesser sentence would depreciate the seriousness of the crime.

■ Without challenging the first two factors, Robinson claims that the third factor was improperly used as an aggravator. He correctly points out that this statutory aggravating factor has application only when considering imposition of a sentence of shorter duration than the presumptive sentence, not when enhancing a sentence. *See Penick v. State,* 659 N.E.2d 484, 488 (Ind.1995). However, "[d]espite a trial court's use of an improper aggravating circumstance to enhance a sentence, this Court will affirm if the other aggravating circumstances are adequate to support the sentence imposed." *Scheckel v. State,* 620 N.E.2d 681, 684 (Ind.1993).

■ In the present case, the other two aggravating factors considered by the trial court represent particularized, individual circumstances of the criminal act, and they support imposition of an enhanced sentence. *See Ector v. State,* 639 N.E.2d 1014, 1016 (Ind.1994). We therefore find no error.

**2.** The spirit of our criminal law would not be fostered by a ruling that Robinson could not be convicted of robbing a man he had just killed.

## Conclusion

We affirm the trial court.

DICKSON, SELBY and BOEHM, JJ., concur.

SULLIVAN, J., concurs as to parts I, III, IV and V; concurs in result as to part II; and dissents as to part VI.