OPINION
BAKER, Chief Judge.
Appellant-defendant Kevin L. Hampton appeals his convictions for Murder,[1] a felony, Rape,[2] a class B felony, and Criminal Deviate Conduct,[3] a class B felony. Specifically, Hampton claims that the trial court erred in denying his motion for a mistrial, that the evidence was insufficient to support his convictions for rape and criminal deviate conduct, and that the trial court erred in imposing the maximum sentence on all counts and ordering his sentence for murder to run consecutively to the sentences imposed for rape and criminal deviate conduct, which were ordered to run concurrently with each other. Hampton further claims that the trial court erred in ordering those sentences to run consecutively to one that he was already serving in an unrelated cause. Concluding that the evidence was sufficient to support the convictions and finding no other error, we affirm the judgment of the trial court.

FACTS

On May 18, 2000, D.L. invited some friends to her home in Terre Haute to play cards, listen to music, and drink beer. At some point during the evening, D.L. and a friend — Courtney Smith — walked next door and obtained some marijuana from a neighbor. Hampton was at the residence at the time. Thereafter, D.L. and Smith visited some other friends at various locations in Terre Haute.
D.L. returned home the following morning, and one of her friends, Justin Morrison, telephoned D.L. around 2:30 a.m. to find out whether she had returned safely. At some point during the conversation, *1077 D.L. told Morrison that she heard a knock on her door and that she would talk to him later.
At approximately 11:30 a.m., Smith and Ashley Potter went over to D.L.’s residence. When Smith walked into D.L.’s bedroom, she noticed that D.L. was “sprawled out on the bed [and] naked from the waist down.” Tr. p. 122. They decided not to awaken D.L., so they left the house. However, Smith and Potter returned to D.L.’s house later that afternoon. Smith decided to take a shower and she observed some broken glass in the bathroom sink. After showering, Smith walked into D.L.’s bedroom and tried .to awaken her. Smith noticed that a blow dryer “was in [D.L.’s] vaginal area.” Id. at 159, 173-74. D.L.’s head was lying off the bed, and Smith decided to pull a comforter over D.L. However, she noticed that D.L.’s feet and legs were discolored. She touched one of D.L.’s arms and observed that it was cold. Smith then determined that D.L. was dead. Smith walked around to the other side of the bed and noticed that D.L.’s jeans had been tied around her neck. Smith also observed that a telephone headset was lying halfway beneath D.L.’s body. The phone cord was not connected, and one end of the cord had been ripped out of the wall. Smith also noticed that D.L. was still wearing the shirt she had worn the previous evening. Smith then walked over to a neighbor’s house and called the police.
When Dr. Roland Kohr performed an autopsy on D.L., he observed that a blow dryer had been inserted four to five inches into D.L.’s vagina. D.L.’s tongue was also protruding, a condition that is “commonly seen in association with ligature strangula-tions because of the upward pressure that’s maintained on the neck, which causes the laryngeal and tongue-type structures to be pushed upward and outward.” ' Id. at 888. Dr. Kohr also observed that D.L..’s eyes were hemorrhaged, which suggested that D.L. may have been smothered before her jeans were wrapped around her neck. A rape kit was collected, and a vaginal swab taken from D.L. indicated the presence of semen. As a result, a DNA profile was developed and entered into the FBI’s national index system.
Dr. Kohr concluded that the cause of D.L.’s death was ligature strangulation and was of the opinion that the sexual intercourse had occurred prior to D.L.’s death. Dr. Kohr also determined that the hairdryer was inserted shortly after D.L.’s death. On March 17, 2005, the FBI found that Hampton’s DNA matched the profile that had been entered into the system.
On June 12, 2005, Hampton was charged with murder, felony murder, rape, and criminal deviate conduct. At a jury trial that commenced on November 27, 2005, Joe Topolosek, one of the alternate jurors, commented that “[Hampton] might be involved in multiple murders.” Id. at 659. In response, one of the other jurors stated, “you’re not supposed to say things like that.” Id. at 632. After the matter was brought to the trial court’s attention, Topo-losek was excused. The trial court also questioned the remaining jurors individually, and it was determined that five of the regular jurors and one alternate had heard the comment. Of those jurors who had heard the remark, only Ryszard Gasiorow-ski indicated that he did not believe that he could remain impartial. As a result, the trial court excused him from the jury. The remaining jurors indicated that they could disregard the comment and remain impartial. However, Hampton moved for a mistrial, which the trial court denied.
Hampton was found guilty as charged. At a sentencing hearing that was conducted on December 20, 2006, the trial court vacated the conviction for felony murder. *1078 Hampton was then sentenced to sixty-five years for murder, twenty years for rape, and twenty years for criminal deviate .conduct. The trial court ordered the sentences for rape and criminal deviate conduct to run concurrently with each other and consecutively to the sentence for murder. The trial court also ordered the aggregate sentence to run consecutively to a forty-year sentence that Hampton was already serving in an unrelated matter. In arriving at the sentence, the trial court identified Hampton’s lengthy prior criminal history and the nature and circumstances of the crimes as aggravating factors. The trial court also found no mitigating factors. Hampton now appeals.

DISCUSSION AND DECISION

I. Motion for Mistrial

Hampton first claims that his convictions must be reversed because the trial court erred in denying his motion for a mistrial. Specifically, Hampton contends that because the jurors heard alternate juror To-polosek state that Hampton might be a suspect in other murders, “all of the jurors having received this inadmissible information were tainted to such an extent that regardless of their best efforts they could not possibly remain fair and impartial.” Appellant’s Br. p. 7.
We initially observe that the trial judge’s discretion in determining whether to grant a mistrial is afforded great deference because the judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. McManus v. State, 814 N.E.2d 253, 260 (Ind.2004). We therefore review the trial court’s decision solely for an abuse of discretion. Id. “After all, a mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation.” Id.
To prevail on appeal from the denial of a motion for mistrial, the defendant must establish that the questioned conduct “was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected.” Mickens v. State, 742 N.E.2d 927, 929 (Ind.2001). The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury’s decision, not the impropriety of the conduct. Id. Generally, a timely and accurate admonition is an adequate curative measure for any prejudice that results. Schlomer v. State, 580 N.E.2d at 950, 956 (Ind.1991).
In this case, the trial court immediately excused Topolosek from jury service after being made aware of his comment. The trial court then questioned the jurors individually concerning whether any of them had heard the statement. Tr. p. 682-84, 686, 694-95, 701, 718, 732, 760-61, 766-68, 771-72, 780. Five of the jurors and one of the alternates indicated that they had heard Topolosek’s comment. Id. at 635-36, 701-02, 718, 737-38, 782. All of them, except for Gasiorowski, stated that they could disregard the comment and remain impartial. Thereafter, the trial court excused Gasiorowski, and the proceedings continued. Id. at 635-36, 710-11, 722-23, 746, 755, 791-92.
In support of his argument that his motion for mistrial should have been granted, Hampton directs us to Jury Rule 24[4] and claims that the jury should have been dis *1079 charged because several of them had “personal knowledge of a material fact” as a result of Topolosek’s comment. Appellant’s Br. p. 20-21. Notwithstanding this claim, none of the jurors had personal knowledge of a material fact because none, of them knew — as a matter of fact — that Hampton might have been involved in other murders. Rather, it is apparent that the jurors who had heard Topolosek’s comment had, at most, second-hand information about that possibility. Hence, because the trial court questioned each juror and evaluated his or her response to Topo-losek’s comments, we cannot say that the trial court abused its discretion in denying the motion for a mistrial. See Tacy v. State, 452 N.E.2d 977, 982 (Ind.1983) (holding that the defendant’s motion for a mistrial was properly denied when the trial court questioned each juror individually as to whether he or she could remain impartial following a derogatory remark made by a sheriffs deputy about the defendant that had been overheard by one of the jurors).

II. Sufficiency of the Evidence

Hampton next argues that the evidence was insufficient to support his convictions for rape and criminal deviate conduct. Specifically, Hampton claims that his rape conviction must be set aside because “there was practically no evidence that [D.L.] had even engaged in sexual intercourse, let alone any evidence that there was rape.” Appellant’s Br. p. 6 (emphasis added). Hampton also claims that the criminal deviate conduct conviction cannot stand because the evidence established that D.L. was already deceased when the offense was committed.

A. Standard of Review

When reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind.1995). We look to the evidence and -the reasonable inferences therefrom that support the verdict. Id. The conviction will be affirmed if evidence of probative value exists from which the fact finder could find the defendant guilty beyond a reasonable doubt. Id. Indiana Constitution Article 1, section 19 provides: “In all criminal cases whatever, the jury shall have the right to determine the law and the facts.” In keeping with this duty, the jury is free to accept. or reject any evidence. Hall v. State, 560 N.E.2d 561, 563 (Ind.Ct.App.1990). Simply put, we typically will not invade the province of the jury as the sole judge of the credibility of a witness. Pritchard v. State, 248 Ind. 566, 230 N.E.2d 416, 418 (1967). We will affirm unless “no rational fact finder” could have found the defendant guilty beyond a reasonable doubt. Clark v. State, 728 N.E.2d 880, 887 (Ind.Ct.App.2000).
We also note that a criminal conviction may be based solely on circumstantial evidence. Moore v. State, 652 N.E.2d 53, 55 (Ind.1995). Even where the evidence is entirely circumstantial, the evidence need not exclude every reasonable hypothesis of innocence. Id. It is enough if an inference reasonably tending to support the verdict can be drawn from the circumstantial evidence. Id.

B. Rape

To convict Hampton of rape, the State was obligated to prove that he knowingly had sexual intercourse with D.L. when D.L. was “compelled by force or the imminent threat of force.” I.C. § 35-42-4-l(a)(l). Contrary to Hampton’s contention that his conviction for rape must be vacated because the evidence failed to establish that D.L. had engaged in sexual intercourse, our Supreme Court has determined that a jury may properly infer that a defendant had sexual intercourse with *1080 the victim when the defendant’s semen was found in vaginal swabs taken from the victim. Overstreet v. State, 783 N.E.2d 1140, 1152-53 (Ind.2003). The court in Overstreet also found that the evidence was sufficient to establish that the victim had been raped where, in addition to the defendant’s sperm found in her vagina, an autopsy revealed that the victim had been strangled to death by a shoelace and the strap from her bib overalls, and a circular wound was found on her body that was consistent with a gunshot wound. Id.
As in Overstreet, the jury in this instance could have reasonably inferred that D.L. was compelled to have sex by force or the threat of force based on Dr. Kohr’s testimony that she had been suffocated and strangled and had sexual intercourse shortly before her death. Tr. p. 941-43. Thus, we decline to set aside Hampton’s rape conviction. See Maslin v. State, 718 N.E.2d 1230, 1235 (Ind.Ct.App.1999) (holding that the forcible element of rape may be inferred from the circumstances).

C. Criminal Deviate Conduct

Hampton also asserts that his conviction for this offense must be vacated because the evidence demonstrated that D.L. was deceased when the offense was committed. In essence, Hampton argues that he could not have committed the charged offense in light of Dr. Kohr’s testimony that the hair dryer was inserted in D.L.’s vagina following her death.
To convict Hampton of criminal deviate conduct as a class B felony, the State was required to prove that Hampton caused D.L. to submit to deviate sexual conduct by force or the imminent threat of force. I.C. § 35-42-4-2. In accordance with Indiana Code sections 35-41-1-14 and -22, a “person” means a “human being,” and “[h]uman being means an individual who has been born and is alive.”
In light of these provisions, Hampton relies on Dr. Kohr’s opinion at trial that the hair dryer was placed in D.L.’s vagina after her death and, therefore, D.L. was no longer a “person” when the incident occurred. Appellant’s Br. p. 10. However, as noted above, the jury was free to reject Dr. Kohl’s “belief,” tr. p. 945, that D.L. was deceased when the offense was committed. Hall, 560 N.E.2d at 563. In our view, the jury could have reasonably inferred that D.L. was alive when Hampton committed the crime from additional evidence that was presented at trial, including the short period of time that elapsed between the commission of the offenses and the suffocation and strangulation of D.L. Hence, the jury could conclude beyond a reasonable doubt that Hampton committed the crime. See Miller v. State, 770 N.E.2d 763 (Ind.2002) (holding that the defendant was properly convicted of criminal deviate conduct when the evidence established, among other things, that the elderly victim suffered head and neck injuries, died from manual strangulation, there was evidence of sexual assault, and the defendant was at the victim’s apartment shortly before she was discovered).
Moreover, we note that in Robinson v. State, 693 N.E.2d 548 (Ind.1998), the defendant was convicted of robbery and argued on appeal that because the evidence showed that the victim was deceased when the property was taken, the items could not have been removed from a “person.” Id. at 554. In rejecting that argument, our Supreme Court observed:
The record contains abundant evidence that the taking of [the victim’s] property was effectuated by the use of force against him while he was still alive. That [the defendant] waited until after [the victim’s] death actually to take the property is of no moment.
*1081 Id. Further, the Robinson court stated that “the spirit of our criminal law would not be fostered by a ruling that [the defendant] could not be convicted of robbing a man he had just killed.” Id. Similarly, the spirit of our criminal law would not be fostered if Hampton could avoid a conviction for committing criminal deviate conduct upon an individual whom he had just killed.
The jury in this case could reasonably find that Hampton caused D.L. to submit to deviate sexual conduct by the use of force, namely, by suffocating and strangling her. Put another way, the record supports the inference that Hampton committed the act of sexual deviate conduct by engaging in the force against D.L. while she was still living. That Hampton may have waited until after D.L.’s death to place the object in her vagina “is of no moment.” Id. For these reasons, we decline to set aside Hampton’s conviction for criminal deviate conduct.

III. Sentencing

Finally, Hampton argues that he was improperly sentenced. Specifically, Hampton maintains that the trial court erred in imposing the “maximum possible penalties and running them consecutive to each other as well as consecutive to a previously imposed sentence.” Appellant’s Br. p. 8.
In this case, Hampton argues that even though he committed the offenses in 2000 — well before the amended sentencing statutes became effective[5] — he is entitled to reap the benefits of those provisions becausé they are ameliorative and he would receive a lesser sentence under the new scheme. See Richards v. State, 681 N.E.2d 208, 213 (Ind.1997) (holding that a defendant who is sentenced after the effective date of a statute providing for more lenient sentencing is entitled to be sentenced pursuant to that statute rather than the sentencing statute in effect at the time of the commission or conviction of the crime). Thus, Hampton relies on this court’s opinion in Robertson v. State, 860 N.E.2d 621 (Ind.Ct.App.2007), trans. granted, where the defendant argued that a trial court must impose the advisory sentence if it orders the sentence to be served consecutively to another sentence. On appeal, a panel of this court determined that “[t]he advisory sentencing statute, IC 35-50-2-1.3, is clear and unambiguous and imposes a separate and distinct limitation on a trial court’s ability to deviate from the advisory sentence for any sentence running consecutively.” Id. at 625. However, our Supreme Court granted transfer in Robertson and determined that “under the sentencing laws from April 25, 2005, a court imposing a sentence to run consecutively to another sentence is not limited to the advisory sentence. Rather, the court may impose any sentence within the applicable range.” Robertson, 871 N.E.2d at 281-82. Our Supreme Court also observed that the “the recent amendment to [Indiana Code section 35-50-2-1.3], which became effective July 1, 2007, confirms that the previous version of the statute was not meant to impose additional restrictions on a trial court’s ability to impose consecutive sentences.” Id. at 285-86. Thus, in light of our Supreme Court’s pronouncement in Robertson, Hampton’s claim that he was improperly sentenced on this basis fails.
*1082 Likewise, we reject Hampton’s contention that he could not have received maximum consecutive sentences under the former statute that was in effect when Hampton committed the offenses. Indiana Code section 35-50-1-2 previously provided that
As used in this' section, “crime of violence” means:
(1) murder;
[[Image here]]
(8) rape;
(9) criminal deviate conduct.
[[Image here]]
(c) [T]he court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the aggravating and mitigating circumstances ... in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. [EJxcept for crimes of violence, the total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.
(Emphasis added).
As noted above, all three crimes for which Hampton was convicted and sentenced are crimes of violence. Thus, the limitations set forth in the statute do not apply to Hampton’s sentences, and the trial court did not err in sentencing Hampton on this basis.
Finally, with respect to Hampton’s claim that the trial court erred in ordering the aggregate sentence on these offenses to run consecutively to the sentence that had been imposed in the unrelated offense, our Supreme Court observed in Mathews v. State, 849 N.E.2d 578, 589 (Ind.2006), that
The imposition of consecutive sentences is a separate and discrete decision from sentence enhancement, although both may be dependent upon the same aggravating circumstances. Ajabu v. State, 722 N.E.2d 339, 343 (Ind.2000). As with sentence enhancement, even a single aggravating circumstance may support the imposition of consecutive sentences. Sanquenetti v. State, 727 N.E.2d 437, 442 (Ind.2000).
In this case, the trial court identified two aggravators at sentencing. First, it found Hampton’s lengthy criminal history as a significant aggravating circumstance. Appellant’s App. p. 17. Indeed, the trial court noted that Hampton’s “four page long criminal record” included five prior felony convictions in Indiana for robbery, burglary, theft, and two counts of dealing in cocaine as well as convictions from other jurisdictions. Id. Hampton also had accumulated eleven misdemeanor convictions, and the trial court commented at the sentencing hearing that Hampton has “been arrested virtually every year that [he was not] in the Department of Corrections since 1981 when [he] had [the] robbery convictions.” Id. Second, the trial court commented on the “horrific brutality of the offenses” as an additional basis for the sentences that were imposed. Id. at 18-19. In sum, we cannot say that the trial court abused its discretion in ordering the aggregate sentence on the three offenses in this cause to run consecutively to the sentence that had been imposed in the unrelated offense.
*1083 The judgment of the trial court is affirmed.
BAILEY, J., and VAIDIK, J., concur.

. Ind.Code§ 35-42-1-1(1).

. I.C. § 35-42-4-1.

.I.C. § 35-42-4-2.

. "If the court finds that the juror has personal knowledge of a material fact, the juror shall be excused, and the court shall replace that juror with an alternate. If there is no alternate juror, then the court shall discharge the jury without prejudice, unless the parties agree to submit the cause to the remaining jurors.” Ind. Jury Rule 24.

. Effective April 25, 2005, the legislature amended the sentencing statutes to replace "presumptive” sentences with "advisory” sentences and to provide the sentencing court discretion to impose any sentence within the statutory range. Ind.Code §§ 35-35-3-1, -38-1-7.1, -50-1-2, 50-2-3 to -7. The length of each advisory sentence is the same as its predecessor presumptive sentence.