## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 26 2016, 9:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Douglas M. Grimes
Douglas M. Grimes, P.C.
Gary, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Freddie Rhodes, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 26, 2016 <br><br> Court of Appeals Cause No. 20A03-1508-CR-1181 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Terry C. Shewmaker, Judge <br><br> Trial Court Cause No. 20C01-1409-MR-5 |

**Barnes, Judge.**

# Case Summary

[1] Freddie Rhodes appeals his conviction for felony murder. We affirm.

# Issues

[2] Rhodes raises several issues, which we revise and restate as:

    I.      whether the trial court properly denied his request for a trial separate from his co-defendant;

    II.     whether the trial court properly denied his request to compel discovery;

    III.    whether the trial court properly required Rhodes and his co-defendant to share peremptory challenges;

    IV.    whether the trial court properly ordered individualized voir dire with respect to one of the jurors; and

    V.     whether the evidence is sufficient to sustain his conviction for felony murder.

# Facts[1]

[3] Brenda Marsh and her husband lived in Goshen with Brenda's children, Daosha, Laqwela, ZaCarra, Zameishia, and Dramar, Laqwela's boyfriend, Norman Gray, and their baby, Daosha's child, and Brenda's brother, Joe. The

---

[1] Rhodes's statement of the facts is merely a detailed recitation of the statement of the case. Rhodes fails to discuss any of the actual facts of the case, despite his challenge to the sufficiency of the evidence. We remind Rhodes that Indiana Appellate Rule 46(A)(6) provides the statement of facts "shall describe the facts relevant to the issues presented for review but need not repeat what is in the statement of the case."

family knew Rhodes, Deante Dalton, and Dretarrius Rodgers. On the night of September 14, 2015, Brenda left the house at approximately 10:30 p.m. to take her mother home. While she was gone, Rhodes, Dalton, and Rodgers arrived and entered the house. Each had his face covered with a ski mask or bandana, and each was armed with a handgun.

[4] Rhodes and Rodgers went downstairs to the basement, and Dalton stayed on the main level of the house. Rhodes and Rodgers pointed their guns at Norman and Laqwela, who was holding their baby, and demanded, "Where is the stuff." Tr. p. 1329. Laqwela recognized the men as Rhodes and Rodgers. Norman directed the men to the laundry room. In the laundry room, Norman began fighting with Rodgers and trying to take the gun from him, and Laqwela ran upstairs with the baby. Rodgers started shooting, and Norman was injured on his hip, chest, hand, and shoulder. Rodgers was also shot in the neck, wrist, hip, and buttock, and died from his wounds in the basement.

[5] During the scuffle downstairs, Brenda returned from dropping off her mother. She recognized Rhodes's vehicle, which was parked in front of the house. Brenda walked into the house and encountered a man wearing a ski mask and carrying a handgun. Brenda recognized the man as Dalton. Dalton aimed his gun at her and told her to "sit the F-down," and Brenda responded, "little boy, this is not Halloween . . . stop playing." *Id.* at 655. Dalton then told Brenda to sit down again, and she realized that he was serious. Dalton was holding her laptop under his arm. Brenda could hear a "scuffle downstairs" and then heard four or five quick gunshots. *Id.* at 660. Brenda then heard footsteps coming up

the stairs and a second set of two or three gunshots, which were softer than the others. Immediately after the second set of gunshots, Rhodes came up the stairs, tapped Dalton on the shoulder, and said, "let's go." *Id.* at 665. The two men walked outside, and Brenda called 911. Brenda looked out the front door, and she saw Dalton get in the front passenger seat of Rhodes's vehicle. As they drove away, Dalton was hanging out of the window and shooting at the house.

[6] A bullet recovered from Rodgers's body was a large caliber bullet, possibly a 0.40 or 0.45 caliber. A .380 semi-automatic handgun was found near Rodgers's body. No other guns were found in the house. Bullets found on the main level of the house were all fired by a .38 Special revolver or a .357 Magnum revolver.

[7] The police later located Rhodes's vehicle, and the Marsh family's laptop was inside of it. Dalton admitted to the police that he had gone to the Marsh residence with Rhodes and Rodgers to rob them. The State charged Rhodes and Dalton with felony murder. Rhodes filed a motion for a trial separate from Dalton, which the trial court denied. Rhodes also repeatedly filed motions to compel the State to produce police reports in discovery, which the trial court also denied. A jury found Rhodes and Dalton guilty as charged. Rhodes now appeals.[2]

---

[2] We affirmed Dalton's conviction in his direct appeal. *See Dalton v. State*, No. 20A05-1508-CR-1098, 2016 WL 3556433 (Ind. Ct. App. June 29, 2016).

# Analysis

## I. Severance

[8] Rhodes argues that the trial court abused its discretion by denying his motion to sever his trial from that of his co-defendant, Dalton. Although Rhodes sets forth the standard for severance of a trial, he fails to apply that standard to this case and conduct any analysis of the issue. The issue is waived for failure to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring argument be supported by coherent reasoning with citations to authority); *Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the failure to present a cogent argument or citation to authority constitutes waiver of issue for appellate review).

[9] Waiver notwithstanding, our supreme court has held that several defendants may be joined in a single prosecution. *Lee v. State*, 684 N.E.2d 1143, 1147 (Ind. 1997) (citing Ind. Code § 35-34-1-9). However, upon the filing of a motion by a defendant, the trial court may order a separate trial "whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant." *Id.* (quoting Ind. Code § 35-34-1-11(b)). The trial court has discretion to grant or deny a motion for separate trials. *Id.* However, a trial court must grant severance if there are mutually antagonistic defenses and the acceptance of one defense precludes the acquittal of the other defendant. *Id.* On appellate review, the trial court's decision is measured by what actually occurred at trial rather than what is alleged in the motion. *Id.*

In denying Rhodes's motion for a separate trial, the trial court noted that "Defendant, by counsel, presented no argument, and offered no reason, authority or case law in support of his request for separate trials." App. p. 85. On appeal, his sole argument is: "Counsel for co-defendant in closing argument pointed to Rhodes and argued to the jury that Rhodes committed Robbery and Felony Murder, not his client." Appellant's Br. p. 17.

Rhodes and Dalton were charged with the same offense, they were accomplices, and the same evidence applied to each. Rhodes did not demonstrate that a separate trial was necessary to protect his right to a speedy trial or was appropriate to promote a fair determination of his guilt or innocence. Rhodes also failed to demonstrate that he and Dalton had mutually antagonistic defenses or that the acceptance of Dalton's defense precluded his acquittal. Although Dalton may have argued during closing that Rhodes fired the fatal shots, given the felony murder charge and accomplice liability principles, it was irrelevant whether Rhodes or Dalton actually fired the shots. Consequently, we conclude that the trial court did not abuse its discretion when it denied Rhodes's request for a trial separate from Dalton.

## II. Discovery

Next, Rhodes seems to argue that the trial court abused its discretion when it denied his motions to compel discovery. Rhodes's argument lacks a standard of review or analysis of the issue. He fails to make a cogent argument, and the issue is waived. *See* Ind. Appellate Rule 46(A)(8)(a); *Cooper*, 854 N.E.2d at 834 n.1.

Waiver notwithstanding, "[d]ecisions relating to discovery requests are committed to the discretion of the trial court and will not be reversed absent clear error in the exercise of that discretion." *Goudy v. State*, 689 N.E.2d 686, 695 (Ind. 1997). Rhodes's argument seems to concern police reports that summarized witnesses' statements. "In general, police reports constitute work product of the prosecutor, and a trial court is powerless to order production of such reports." *Robinson v. State*, 693 N.E.2d 548, 552 (Ind. 1998); *see also Goudy*, 689 N.E.2d at 695 ("Unless the privilege has been waived, investigative police reports are not discoverable and are considered protected as the work product of the prosecutor."). Substantially-verbatim witness statements, however, are subject to discovery. *Robinson*, 693 N.E.2d at 552. "When a police report allegedly contains a verbatim witness statement interspersed with the officer's work product, 'in-camera inspection by the trial court should permit the court to determine whether a document is essentially a verbatim statement and therefore discoverable or essentially a police report containing occasional quotations and thus privileged.'" *Id.* (quoting *Crawford v. Superior Court of Lake County*, 549 N.E.2d 374, 376 (Ind. 1990)).

Further, Elkhart County Local Rule 20-CR00-CRDD-14(A) provides, in part:

> In any criminal case, each party shall routinely disclose:
>
> 1) The names, dates of birth, Social Security Account Numbers, and last-known addresses of all persons whom that party may call as witnesses, together with any written or recorded statements the person may have made, *any memoranda containing substantially-verbatim reports of any oral statements the person may*

> *have made* and summaries of the anticipated testimony of each potential witness . . . .

(emphasis added).

[15] On appeal, Rhodes argues that he was entitled to receive the reports pursuant to the local rule.[3] Rhodes seems to be confusing the police reports with witness summaries, which are also required by the local rule and were provided to Rhodes by the State. The State noted that the police reports were merely summaries of audio and video interviews, which had already been provided to Rhodes in discovery. According to the State, the police reports were not verbatim reports of oral statements or even substantially-verbatim. The State argued that the police reports were work product that was not required to be produced in discovery, and the trial court repeatedly denied Rhodes's requests for production of those police reports.

[16] Rhodes presents no argument or evidence that the police reports qualified as substantially-verbatim reports of oral statements, and he cites nothing to indicate that he requested an in camera inspection by the trial court. Given the lack of any evidence that the police reports contained substantially-verbatim witness statements, we cannot say that the trial court abused its discretion by denying Rhodes's motions to compel.

---

[3] Rhodes also complains that Dalton's counsel received the police reports. The State notes that Dalton's counsel signed a confidentiality agreement and was provided with the police reports. Rhodes's counsel, on the other hand, did not sign a confidentiality agreement.

### III. Peremptory Challenges

Rhodes seems to argue that the trial court erred by ordering that he share peremptory challenges with his co-defendant Dalton. However, Rhodes's one-sentence argument is neither supported by cogent reasoning, citations to the record, or citation to relevant authority. Consequently, the argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a); *Cooper*, 854 N.E.2d at 834 n.1.

Waiver notwithstanding, we note that Indiana Code Section 35-37-1-3 provides, in part:

> (b) In prosecutions for murder, where the death penalty is not sought, and Level 1, Level 2, Level 3, Level 4, or Level 5 felonies, the defendant may challenge, peremptorily, ten (10) jurors.
>
> * * * * *
>
> (d) When several defendants are tried together, they must join in their challenges.

Similarly, Indiana Jury Rule 18(a) provides:

> In criminal cases the defendant and prosecution each may challenge peremptorily:
>
> * * * * *
>
> (2) ten (10) jurors when neither the death penalty nor life without parole is sought in prosecutions for murder, and Class A, B, or C

felonies, including enhancements, and Level 1, 2, 3, 4, or 5 felonies, including any enhancement(s);

\* \* \* \* \*

When several defendants are tried together, they must join their challenges.

Although Rhodes and Dalton objected to sharing peremptory challenges, the trial court overruled their objections and indicated that it would follow Jury Rule 18(a). Our supreme court has held that the sharing of peremptory challenges does not constitute reversible error absent a showing of actual prejudice. *Peck v. State*, 563 N.E.2d 554, 557 (Ind. 1990). Given the statutory authority, the jury rule on the subject, and the lack of any showing of actual prejudice, the trial court did not err by requiring Rhodes and his co-defendant to share the peremptory challenges.

### IV. Voir Dire

Next, Rhodes argues that the trial court abused its discretion and "deprived Rhodes of a fair trial by treating [a] prospective juror, Juror #5580, different than other jurors by excusing other prospective jurors from the courtroom to prevent them from hearing what Juror #5580 said on voir dire." Appellant's Br. p. 17. Again, Rhodes has failed to make a cogent argument, and the argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a); *Cooper*, 854 N.E.2d at 834 n.1.

[22] Waiver notwithstanding, we note that trial courts have broad discretionary power in regulating the form and substance of voir dire. *Logan v. State*, 729 N.E.2d 125, 133 (Ind. 2000). "The decision of the trial court will be reversed only if there is a showing of a manifest abuse of discretion and a denial of a fair trial." *Id.* "This will usually require a showing by the defendant that he was in some way prejudiced by the voir dire." *Id.* "Individualized voir dire of prospective jurors may be required where the circumstances are highly unusual or potentially damaging to the defendant." *Hadley v. State*, 496 N.E.2d 67, 72 (Ind. 1986). The use of individual voir dire is a matter that falls within the trial court's broad discretionary power in regulating the form and substance of voir dire examination. *Carr v. State*, 728 N.E.2d 125, 129 (Ind. 2000).

[23] Here, the prospective juror was questioned about holding one accountable for his or her actions, and the prospective juror started to raise a different criminal case as an example. The trial court stopped the questioning and said, "We're not going to talk about other cases." Tr. p. 434. The trial court later allowed the prospective juror to be questioned outside the presence of the other jurors. The trial court was concerned that the prospective juror was referring to a recent felony murder case that had been tried in that court and that a discussion of the other case would "poison the well." *Id.* at 479. Rhodes objected and requested a mistrial. The trial court overruled the objection and denied the

motion for a mistrial.[4]  The trial court was well within its discretion to have the prospective juror questioned individually given the unusual circumstances, and Rhodes has not identified how he was prejudiced by the procedure.

## *V.  Sufficiency of the Evidence*

[24]  Rhodes also argues that the evidence is insufficient to sustain his conviction for felony murder.  When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility.  *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).  "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence."  *Id.*  We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt.  *Id.*

[25]  Rhodes was convicted of felony murder.  Under the felony murder statute, the State was required to prove that Rhodes killed Rodgers while committing or attempting to commit robbery.  Ind. Code § 35-42-1-1(2).  The fact that the robbery resulted in the death of a co-perpetrator does not save Rhodes from criminal liability for murder.  *Forney v. State*, 742 N.E.2d 934, 938 (Ind. 2001).  Our supreme court has held that the felony murder rule applies "'when, in committing any of the designated felonies, the felon contributes to the death of any person.'"  *Id.* (quoting *Palmer v. State*, 704 N.E.2d 124, 126 (Ind. 1999)).  It

---

[4] Rhodes does not appeal the denial of the motion for a mistrial.

does not matter "whether the death caused is that of the intended victim, a passerby or even a co-perpetrator." *Id.* at 938-39. Further, our supreme court has explained:

> Where the accused reasonably should have . . . foreseen that the commission of or attempt to commit the contemplated felony would likely create a situation which would expose another to the danger of death at the hands of a nonparticipant in the felony, and where death in fact occurs as was foreseeable, the creation of such a dangerous situation is an intermediary, secondary, or medium in effecting or bringing about the death of the victim. There, the situation is a mediate contribution to the victim's killing.

*Palmer*, 704 N.E.2d at 126.

Rhodes argues that there was no evidence that he "or others in the house stole or robbed any person of any property" and that Rodgers's death was not reasonably foreseeable. Appellant's Br. p. 13. Rhodes also summarizes some of Norman Gary's testimony and seems to argue that he did not shoot Rodgers.

The State presented evidence that Rhodes, Dalton, and Rodgers entered the Marsh residence armed with handguns to rob the family. They in fact left the house with the family's laptop. Based on the ballistics evidence, the State points out that "by far the most reasonable inference from the evidence is that it was [Rhodes] himself who fired the shots that killed Rodgers during this attempted robbery gone wrong." Appellee's Br. p. 18. Moreover, it was

reasonably foreseeable that engaging in a violent home invasion armed with handguns would result in someone's death.[5]

[28] We addressed the same argument in Dalton's appeal. There, we concluded that the evidence was sufficient to sustain Dalton's conviction for felony murder. We noted that "the State presented sufficient evidence to prove that Dalton's actions, both as a principal and as an accomplice, were a mediate or immediate cause of Rodgers's death." *Dalton v. State*, No. 20A05-1508-CR-1098, 2016 WL 3556433, at *7 (Ind. Ct. App. June 29, 2016). Similarly, here, Rhodes's actions, both as a principal and as an accomplice, were a mediate or immediate cause of Rodgers's death. The evidence is sufficient to sustain Rhodes's conviction.

## Conclusion

[29] The trial court properly denied Rhodes's motion for a separate trial and his motions to compel discovery. The trial court also properly conducted voir dire and ordered the sharing of peremptory challenges. Finally, the evidence is sufficient to sustain Rhodes's conviction for felony murder. We affirm.

---

[5] Our supreme court recently reversed a felony murder conviction in *Layman v. State*, 42 N.E.3d 972, 979-80 (Ind. 2015), where a group of young men broke into and entered the residence of a homeowner intending to commit a burglary and one of the men was killed by the homeowner. Our supreme court pointed out that the men were unarmed and that they were not engaged in any "dangerously violent and threatening conduct." *Layman*, 42 N.E.3d at 979. "There was simply nothing about the Appellants' conduct or the conduct of their cohorts that was 'clearly the mediate or immediate cause' of their friend's death." *Id.* at 979-80 (quoting *Palmer*, 704 N.E.2d at 126). The court held that, while the evidence was sufficient to sustain a conviction for the underlying burglary, it was not sufficient to sustain a conviction for felony murder in the perpetration of a burglary. This case is distinguishable because Rhodes, Dalton, and Rodgers entered the home armed with handguns and engaged in a violent confrontation with residents of the home.

Affirmed.

Vaidik, C.J., and Mathias, J., concur.