Guilford FORNEY, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 49S00–0001–CR–25.

Supreme Court of Indiana.

Feb. 27, 2001.

---

Kurt A. Young, Nashville, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

After hearing eyewitness testimony, a jury found Guilford Forney guilty of felony murder, conspiracy to commit robbery and robbery. In this direct appeal, he contends that the evidence was insufficient to sustain these convictions and that the trial court erred when it allowed the State to twice amend its charging information.

**Facts and Procedural History**

On April 4, 1999, Mark Bankhead and Michael Cornner met at Lafayette Square Mall in Indianapolis to sell a pound of marijuana to Chris Matthews. Jacqueline Woods had arranged the deal. Jamar Reynolds drove Woods and Matthews to the location planned for the meeting. Reynolds' cousin, appellant Forney, rode in the front passenger seat and Corey Henderson rode in the seat behind him.

At the meeting, Matthews and Woods exited Reynolds' car and walked over to the automobile where Bankhead and Cornner sat. (R. at 218–20, 285–86.) Cornner showed Matthews the marijuana that he intended to sell. (R. at 190–91.) Cornner then got out of Bankhead's car and into the back seat of Reynold's car, with Matthews on his left and Henderson on his right. (R. at 288–89, 190–91, 195.)

Reynolds drove the car around the back of the mall and Bankhead followed in his car. Cornner asked several times, "Who wants the marijuana, lets make the deal." (R. at 201–02.) No one in the car responded to his question. Instead, Reynolds sped the car away from Bankhead who was still following them. Forney then instructed Matthews and Henderson to get the money by saying, "[G]et the scrill get the scrill." (R. at 203.)

Suddenly, Henderson pulled out a gun from between the front passenger seat and the door. (R. at 204, 213, 291.) He pointed the gun at Cornner's stomach and said, "Shut up, empty your pockets." (R. at 204, 292.) Cornner raised his hands and allowed Henderson to search his pockets for money. (R. at 205–06, 292.) During this time, Forney "mess[ed] with the radio" and said, "[L]ets go to my house." (R. at 206, 293.)

Cornner then grabbed Henderson's wrist and hand that held the gun. (R. at 206, 293.) As they struggled, Henderson pulled the trigger and the gun fired a bullet into Reynolds. (R. at 206–07, 294.) Reynolds' head fell onto the steering column and the car sped through the intersection, over a median and down a ditch. (R. at 207, 294.) Cornner, Forney, Matthews and Henderson jumped out of the car, leaving Reynolds in the driver seat. (R. at 207, 235, 294.) The car then crashed into the window of a furniture store.

After arriving at the scene, a reserve deputy with the Marion County Sheriff's Department observed Forney standing in a grassy area between the roadway and

the furniture store. (R. at 146.) Forney was visibly upset and crying. (R. at 146, 162–63.) Forney told the deputy that his cousin had been shot. (R. at 147, 163.) Reynolds died from a gunshot wound to the chest.

On April 7, 1999, the State charged Forney and Matthews with felony murder, conspiracy to commit robbery and robbery. Forney requested a speedy trial on May 24, 1999. Due to court congestion, the trial was set for August 2, 1999. Further court congestion caused a postponement, and the trial finally began on September 13, 1999.

On the first day of trial the State was permitted to amend its complaint by removing Matthews as a defendant and by inserting Henderson's name as the "unidentified black male companion" of Forney. (R. at 22, 60.) During trial, the court permitted the State to amend again, by removing the phrase "[l]et's do this shit" as one of the overt acts Forney performed in furtherance of an agreement to rob Cornner. (R. at 60–61, 314–15, 343–44.)

A jury found Forney guilty of felony murder, conspiracy to commit robbery, and robbery. He was sentenced to concurrent terms of fifty-five years, thirty years, and thirty years on the respective counts.

## I. Sufficiency of the Evidence

Forney first argues that the State did not present sufficient evidence to convict him of conspiracy to commit robbery, robbery or felony murder. (Appellant's Br. at 10–12.)

When reviewing convictions for sufficiency of the evidence, we look to the evidence most favorable to the verdict and all of the reasonable inferences that evidence provides. *Baker v. State,* 273 Ind. 64, 66, 402 N.E.2d 951, 953 (1980) (citations omitted). We do not reweigh the evidence or determine the credibility of witnesses. In addressing an insufficiency claim, we determine whether there was substantive probative evidence to support the judgment. *Id.* If a reasonable trier of fact could have found the defendant guilty, we will affirm the decision of the trial court. *Id.*

*Conspiracy to Commit Robbery.* To sustain a conviction for the conspiracy to commit robbery, the evidence must show: 1) the intent to commit a robbery; 2) the agreement with another to commit a robbery; and 3) an overt act performed by the defendant or the person with whom the defendant has entered into the agreement. Ind.Code Ann. § 35–41–5–2 (West 1998). Forney challenges the second element, asserting that there was no evidence that he made an agreement with Henderson to rob Cornner. (Appellant's Br. at 10.)

As we recently reiterated, the State need not prove the existence of a formal, express agreement in order to carry its burden in a conspiracy case. *Jester v. State,* 724 N.E.2d 235, 239 (Ind.2000). Rather, circumstantial evidence may be sufficient to prove the existence of a conspiracy. *Id.*

The State supported Forney's conspiracy charge with the testimony of Cornner, the robbery victim. Cornner met with Forney, Henderson, Reynolds and Matthews in order to sell marijuana to them. Cornner got into the car with the men and attempted to begin the transaction. Neither Forney nor the other passengers responded when Cornner stated, "[L]ets make the deal." (R. at 201–02.) Instead, Reynolds increased the car's speed in order to elude Bankhead, who was following them. As the car accelerated, Forney stated, "Get the scrill," meaning "get the money." (R. at 203.) Upon this instruction, Henderson grabbed a gun, stuck its barrel in Cornner's stomach and demanded his money.

Although Forney's instruction to "get the money" could have multiple meanings, the jury apparently concluded that it was uttered in furtherance of an agreement by

Forney and Henderson to rob Cornner of his cash. This was a reasonable conclusion. Moreover, Cornner's testimony revealed that Henderson grabbed a gun from between the front passenger seat and the front door. The jury could have reasonably concluded that Forney handed the gun to Henderson as Forney instructed him to "get the money." The evidence was sufficient to establish that Forney conspired to rob Cornner.

■ *Robbery.* To convict Forney as charged, the State needed to establish that he knowingly or intentionally took property from Cornner by using or threatening to use force or by putting him in fear, which resulted in serious bodily injury to another. *See* Ind.Code Ann. § 35–42–5–1 (West 1998). Even if the evidence did not show that Forney himself robbed Cornner, he may nevertheless be convicted for the robbery as an accomplice. *See* Ind.Code Ann. § 35–41–2–4 (West 1998) ("A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense....")

■ Forney correctly states that "mere presence at the crime" is not enough. *Harris v. State,* 425 N.E.2d 154, 156 (Ind. 1981). Forney, however, was not merely in the car. Just before the robbery, Forney gave an instruction to "get the [money]." (R. at 203.) After this statement, Henderson reached for a gun that was located next to Forney. During the robbery, Forney distracted himself with the car radio and suggested that the group go to his home.

■ As we indicated in *Wright v. State,* 690 N.E.2d 1098, 1106 (Ind.1997), "[P]resence at the scene, together with evidence as to defendant's conduct before, during and after the crimes which tends to show complicity, can support an inference of participation in the crimes." A jury can "infer participation from a defendant's failure to oppose the crime...." *Harris,* 425

N.E.2d at 156. Consequently, the jury could reasonably infer that Forney participated in the robbery of Cornner by instructing Henderson to "get the money," handing him a gun, acquiescing in the crime and directing the driver where to go after the robbery was completed.

■ As an accomplice, Forney did not have to participate in each and every element of the robbery in order to be convicted of it. *See McGee v. State,* 699 N.E.2d 264, 265 (Ind.1998) (" '[A]n accomplice is criminally responsible for all acts committed by a confederate which are a probable and natural consequence' of their concerted action.") (quoting *Vance v. State,* 620 N.E.2d 687, 690 (Ind.1993)).

■ *Felony Murder.* The State charged Forney with "kill[ing] another human being, that is: Jamar Reynolds, while committing or attempting to commit [r]obbery." (R. at 60.) Similar to the robbery charge, Forney's murder charge was based upon accomplice liability. The evidence discussed above as adequate to convict Forney of robbery is also sufficient to convict him of Reynold's murder, which was a "natural and probable consequence" of the robbery. *Wright,* 690 N.E.2d at 1110.

■ The fact that the robbery resulted in the death of a co-perpetrator does not save Forney from criminal liability for murder. As we have previously observed, the felony murder rule[1] applies "when, in committing any of the designated felonies, the felon contributes to the death of *any* person." *Palmer v. State,* 704 N.E.2d 124, 126 (Ind.1999) (emphasis added); *See also Jenkins v. State,* 726 N.E.2d 268, 269 (Ind. 2000) (rejecting defendant's contention that felony murder statute does not impose criminal liability for murder when resulting death is that of co-perpetrator). Therefore, it matters not whether the

---

1. Indiana Code § 35–42–1–1(2) states, "A person who kills another human being while committing or attempting to commit ... robbery ... commits murder, a felony."

death caused is that of the intended victim, a passerby or even a co-perpetrator.

## II. Amending the Information Twice

Forney next argues that the trial court erred when it allowed the State to amend its charging information immediately before trial and again at the close of the State's case.

On the first day of trial the court permitted the State to amend its complaint by removing Matthews as a co-defendant and by inserting Henderson's name as the "unidentified black male companion" of Forney. (R. at 22, 60.) During the trial, the court permitted the State a second amendment; it removed the phrase "[l]et's do this shit" as one of the overt acts Forney performed in furtherance of an agreement to rob Cornner. (R. at 60–61, 314–15, 343–44.)

Forney argues that the first amendment was prejudicial because it "served to diminish Mr. Matthews' role, if any, in the incident, thus buttressing his credibility as a state's witness in the eyes of the jurors." (Appellant's Br. at 18.) He urges that the amendment prejudiced his defense to the conspiracy charge which relied on Matthews' testimony as to a lack of an agreement with Forney.

Forney also asserts that he was prejudiced by the removal of the phrase describing one of his alleged overt acts. He argues the removal of the phrase "told the jury that the state did not need to prove everything it alleged against Mr. Forney in order to sustain a conviction." (*Id.*)

The State may amend an information "at any time before, during, or after the trial ... in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." Ind.Code Ann. § 35–34–1–5(c) (West 1998).

 Forney asserts that removing Matthews' name prejudicially strengthened Matthews' credibility. Matthews' own testimony, however, revealed that he was a co-defendant and that he had been given use immunity. (R. at 278–80.) Matthews also testified that he was with Forney on the night of the robbery to deal in marijuana. The jury had adequate information to determine what credibility to give Matthews' testimony. The amendment did not prejudice Forney's substantial rights.

 The same is true with inserting Henderson in lieu of the description of an "unidentified black male." We held in *Radford v. State,* 468 N.E.2d 219, 222 (Ind. 1984), that it was not prejudicial to a substantial right to replace the description of a "confidential informant" with that informant's name, where the appellant had sought the name in the days prior to the trial. Forney previously knew of Henderson's involvement. At trial, Forney's counsel stated, "I have no objection with now adding the name Corey Henderson since he's been apprehended." (R. at 124.)

 Finally, the removal of an alleged overt act from Forney's information did not prejudice his substantial rights. In *Haak v. State,* 695 N.E.2d 944 (Ind.1998), the defendant claimed he was prejudiced when the State amended the charging information by deleting one of the overt acts allegedly taken in furtherance of the conspiracy. We held there as we do here that "[b]ecause the amendment only reduced the possible grounds on which the jury could find one element of conspiracy, there was no unfair surprise." *Id.* at 952.

## Conclusion

We affirm the judgment of the trial court.

DICKSON, BOEHM, and RUCKER, JJ., concur.

SULLIVAN, J., is not participating.