ATTORNEY FOR APPELLANT
Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Sep 18 2015, 10:27 am
CLERK
of the supreme court,
court of appeals and
tax court

No. 20S04-1509-CR-549

ANTHONY P. SHARP, JR.,

*Appellant (Defendant below),*

v.

STATE OF INDIANA

*Appellee (Plaintiff below).*

Appeal from the Elkhart Circuit Court
No.20C01-1210-MR-4
The Honorable Terry C. Shewmaker, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 20A04-1310-CR-501

**September 18, 2015**

**Rucker, Justice.**

In a companion case today we remanded to the trial court for further proceedings the sentences imposed on felony murder convictions of two teenage co-defendants—sixteen-year-old Blake Layman and seventeen-year-old Levi Sparks. See Layman v. State, No. 20S04-1509-CR-548, ___ N.E.3d ___ (Ind. 2015). For the same reasons explored in that consolidated appeal we also remand for further proceedings the sentence imposed on a third co-defendant—eighteen-year-old Anthony Sharp.

**Facts and Procedural History**

On the morning of October 3, 2012 sixteen-year-old Blake Layman and seventeen-year-old Levi Sparks were present at the home of sixteen-year-old Jose Quiroz. At some point, the trio discussed committing burglary in the neighborhood. They decided to search for a house where the residents were away because they were aware that the presence of a homeowner during a burglary could result in injuries and more severe legal consequences. Sparks knocked on the door of the first house targeted. When the juveniles heard dogs barking they ran away. Someone was home at the second house they targeted.

Believing no one was home at the time, the juveniles finally settled on the house across the street from where Quiroz lived, which belonged to Rodney Scott. They then contacted their friends eighteen-year-old Anthony P. Sharp, Jr., and twenty-one-year-old Danzele Johnson to "help to get into the house." Tr. at 934. Unbeknownst to them, however, Scott was actually asleep in an upstairs bedroom. Unarmed, the group proceeded to break into Scott's house. While Sparks stayed at Quiroz's house serving as a lookout, Layman, Johnson, Sharp, and Quiroz entered Scott's home by kicking in the rear door to the kitchen. Scott was awakened when he heard a "boom, and [his] whole house just shook." Tr. at 1067. After hearing a second loud boom, Scott immediately grabbed his handgun and cell phone and ran loudly downstairs to scare away any intruders. When Scott reached the bottom of the stairs he saw Sharp run out the back door. He then saw three of the intruders standing near a downstairs bedroom door. Scott began firing his weapon and Layman, Johnson, and Quiroz ran into the bedroom closet. Scott then held the young men at bay in the closet and called 911. While Scott was on the phone the closet door opened and Scott saw Johnson fall to the floor. Quiroz, whom Scott recognized as a

2

neighbor, told Scott that Johnson had been shot. Shortly thereafter Layman yelled that he also had been shot.

When the police arrived, Quiroz attempted to flee. He ran out of the closet and crashed through a glass window. One of the officers pursued Quiroz on foot and he was soon after taken into custody. In the meantime other officers entered the house and arrested Layman who was treated for a gunshot wound to his leg. Johnson's body was found on the bedroom floor just outside the closet. He died at the scene from a gunshot wound. Scott's wallet and watch, which were previously located on the kitchen counter, were retrieved from the closet in which Layman, Johnson, and Quiroz had been hiding.

The State charged Sharp, Layman, Sparks, and Quiroz with felony murder in the perpetration of a burglary. Over defense objections, Sharp, Layman, and Sparks were tried jointly. Quiroz pleaded guilty as charged and at his plea hearing identified all three men as well as Johnson as participants in the burglary. He received a fifty-five-year sentence with ten years suspended to probation. Quiroz testified at the co-defendants' jury trial but recanted his plea hearing testimony declaring that only he, Layman, and Johnson were involved in the burglary. Over defendants' objections a transcript of the plea hearing was introduced into evidence. The jury found each defendant guilty as charged. Thereafter the trial court sentenced Layman and Sharp to fifty-five years and sentenced Sparks to fifty years.

Sharp appealed raising two claims of error. First, he asserted the evidence was insufficient to establish his participation in the burglary because it "rests solely on the testimony of a single witness," Br. of Appellant at 15, namely Jose Quiroz. Next, Sharp contended the felony murder statute was incorrectly applied in this case, citing in support this Court's opinion in Palmer v. State, 704 N.E.2d 124 (Ind. 1999), and arguing the facts here are distinguishable. Finally, Sharp requested revision of his sentence based on Appellate Rule 7(B). The Court of Appeals rejected the first claim noting, "Sharp's conviction rests on more than the testimony of a sole witness whose testimony is uncorroborated. To the extent Sharp points to testimony in the record to support his assertion that Quiroz's identification of Sharp was unreliable, this argument invites this Court to reweigh the evidence and reassess the credibility of the witnesses, a task we

are forbidden to undertake." Sharp v. State, 16 N.E.3d 470, 477 (Ind. Ct. App. 2014) (citing Treadway v. State, 924 N.E.2d 621, 639 (Ind. 2010)). The Court of Appeals also rejected Sharp's attempt to distinguish the facts in this case from those in Palmer and citing additional authority declared, "[f]ollowing established precedent as we must, we find no error in the application of the felony-murder statute to the facts of this case." Id. at 479. As for the third claim the court revised Sharp's sentence to an executed term of fifty-five years with ten years suspended to probation—the same sentence imposed on co-defendant Quiroz. We now grant transfer thereby vacating the Court of Appeals' opinion. See Ind. Appellate Rule 58(A).

## Discussion

### I.

On transfer Sharp advances a single claim: "Whether the precedent of Palmer and the application of the felony murder statute is in need of reconsideration." Pet. to Trans. at i. The State counters this claim "is without merit," Opp'n to Trans. at 6, and that "Sharp's invitation to abandon prior Indiana law and redefine felony-murder is waived." Id. at 4. First, we fail to see how requesting this Court to reevaluate its existing precedent can ever be meritless. Indeed, "Precedent in Need of Reconsideration" is one of the express "principal considerations" governing this Court's decision on whether to grant transfer. See Ind. App. R. 57(H)(5). Second, the State's waiver argument apparently rests on the fact that the Court of Appeals determined Sharp's claim that the felony murder statute was incorrectly applied in this case, "roughly equates to a claim 'that the facts stated do not constitute an offense.'" Sharp, 16 N.E.3d at 477 (quoting Ind. Code § 35-34-1-4(a)(5) (1983)). And, according to the court, because Sharp failed to file a motion to dismiss the charging information against him prior to trial, "his argument here appears to have been waived, because claims may not be made for the first time on appeal." Id. at 478. Even though finding waiver, the court addressed the merits of Sharp's claim. The State complains, "the Court of Appeals erred when it continued to review Sharps' [sic] claim that felony-murder liability should be reinterpreted to exempt him from the statute." Opp'n to Trans. at 4 (citing Sharp, 16 N.E.3d at 478-79).

4

We find no error in the Court of Appeals addressing the merits of a claim notwithstanding waiver. This is a common practice not only with our Court of Appeals colleagues but with this Court as well. Plank v. Cmty. Hospitals of Indiana, Inc., 981 N.E.2d 49, 53 (Ind. 2013) (declaring that "[e]ven though the general rule is that failure to challenge the constitutionality of a statute at trial results in waiver of review on appeal, this Court as well as the Court of Appeals has long exercised its discretion to address the merits of a party's constitutional claim notwithstanding waiver"); Albrecht v. State, 737 N.E.2d 719, 726 (Ind. 2000) (declining to following the general rule that "failure to present [the Court] with a cogent argument supporting his allegation of trial court error results in waiver of the issue" and instead deciding defendant's challenge to the trial court's exclusion of certain evidence on the merits); Jackson v. State, 735 N.E.2d 1146, 1152 (Ind. 2000) (addressing defendant's claim that the trial court erred in admitting certain exhibits disclosing information of a polygraph examination and its result even though defendant's claim had been waived by failing to mount a contemporaneous objection at trial); Ingram v. State, 547 N.E.2d 823, 829 (Ind. 1989) (deciding defendant's claim of error to a jury instruction on the merits in spite of the general proposition that "grounds for objection must be specific and any grounds not raised in the trial court are not available on appeal").

In any event under our Rules of Appellate Procedure, when this Court grants transfer, as we have done here, "the case stands before us in the same procedural posture as it did when initially filed in the Court of Appeals: this Court has 'jurisdiction over the appeal and all issues as if originally filed in the Supreme Court.'" 600 Land, Inc. v. Metro. Bd. of Zoning Appeals, 889 N.E.2d 305, 307 (Ind. 2000) (quoting Ind. App. R. 58(A)). Thus, we decline to reconsider Palmer as Sharp requests on transfer. Rather, we address the claim Sharp made in his direct appeal to the Court of Appeals, namely, whether the felony murder statute was incorrectly applied in this case. And rather than equating Sharp's contention as "a claim 'that the facts stated do not constitute an offense'" we view Sharp's claim, which is essentially the same as those advanced by co-defendants Layman and Sparks, as a challenge to the sufficiency of the evidence. "In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses." Treadway, 924 N.E.2d at 639. "Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict, and we will affirm

the convictions if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id.

The evidence is clear that Sharp and four co-perpetrators participated in a home invasion. Intending to commit theft—a felony—four of the perpetrators broke down the homeowner's back door and entered the house. In consequence, one of the co-perpetrators was fatally wounded. There is no question that the evidence is sufficient to sustain a burglary conviction.[1]

In any event, although today we affirmed the continued validity of Palmer and its progeny, see Layman, No. 20S04-1509-CR-548, slip op. at 6-8, the facts in those cases are significantly different from the facts here. We elaborated:

> In Palmer, for example, although the defendant engaged in kidnapping—one of the felonies designated in the felony murder statute—he did so while pointing "a loaded and cocked handgun at the head of [an officer] and thereafter fired it, injuring the officer." Palmer, 704 N.E.2d at 126. We explained that "[s]uch *conduct* clearly raised the foreseeable possibility that the intended victim might resist or that law enforcement would respond, and thereby created a risk of death to persons present. *This felonious conduct was clearly 'the mediate or immediate cause' of [his accomplice's] death.*" Id. (emphasis added).
>
> In like fashion we affirmed the felony murder conviction for the death of a co-perpetrator during the course of a robbery in Jenkins [v. State, 726 N.E.2d 268 (Ind. 2000)]. The evidence in that case showed that "the defendant held a gun to [robbery victim's] stomach, . . . defendant and [co-perpetrator] then taped [victim's] ankles together and his hands behind his back, . . . defendant retrieved [victim's] girlfriend[] from the second level of the apartment, . . . defendant handed the gun to [co-perpetrator], and the defendant taped [victim's girlfriend's] eyes, mouth, and hands and instructed her to sit in a chair [after which] defendant then took a spoon from a kitchen drawer and heated it, threatening to torture the two victims." Jenkins, 726 N.E.2d at 270. Accordingly, we concluded "the defendant and his co-perpetrator *engaged in dangerously violent and threatening conduct and that their*

---

[1] See Indiana Code section 35-43-2-1 (2012), providing in relevant part: "A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony."

*conduct created a situation that exposed persons present to the danger of death at the hands of a non-participant who might resist or respond to the conduct* . . . and that the defendant's role in creating this dangerous situation, which included the use of at least two guns during the episode, was an intermediary, secondary, or medium in effecting or bringing about the death." Id. at 271 (emphasis added) (internal quotation omitted).

Similarly, in Forney [v. State, 742 N.E.2d 934, 938 (Ind. 2001)], we affirmed the defendant's felony murder conviction based on accomplice liability where, in the perpetration of a robbery, the defendant instructed his co-perpetrator to "get the money by saying, 'get the scrill get the scrill.'" Forney, 742 N.E.2d at 936. Upon which, the co-perpetrator pulled out a gun, pointed it at the stomach of the intended robbery victim and said, "Shut up, empty your pockets." Id. A struggle over the gun ensued. The co-perpetrator fired the weapon, striking another co-perpetrator in the chest who died as a result.

Aside from the fact that in each case a co-perpetrator was fatally injured by someone other than the defendant, the common thread uniting Palmer, Jenkins, and Forney was that an armed defendant engaged in violent and threatening conduct, either as a principle or an accessory, that resulted in the "mediate or immediate cause" of a co-perpetrator's death. By contrast the record here shows that when the group broke and entered the residence of the homeowner intending to commit a theft—a burglary—not only were they unarmed, but also neither the Appellants nor their cohorts engaged in any "dangerously violent and threatening conduct." Jenkins, 726 N.E.2d at 271. There was simply nothing about the Appellants' conduct or the conduct of their cohorts that was "clearly the mediate or immediate cause" of their friend's death. Palmer, 704 N.E.2d at 126. Thus, while the evidence is sufficient to sustain a conviction for the underlying burglary, it is not sufficient to sustain a conviction for felony murder in the perpetration of a burglary.

Id. at 9-11. Accordingly, we reversed the felony murder convictions of both Blake Layman and Levi Sparks. Because Anthony Sharp is identically situated we reverse his felony murder conviction as well and remand this cause for further proceedings. For reasons we explained in Layman, Id. at 11-13, on remand the trial court is instructed to enter a verdict of guilty against Sharp for burglary as a class B felony and resentence him accordingly.

7

## Conclusion

We reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

Rush, C.J., and Dickson, David and Massa, JJ., concur.