## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2016, 11:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Clarence Milton Carlisle, II,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 29, 2016

Court of Appeals Case No.
29A02-1603-CR-590

Appeal from the Hamilton
Superior Court

The Honorable Wayne A.
Sturtevant, Judge

Trial Court Cause No.
29D05-1508-F6-7541

**Najam, Judge.**

# Statement of the Case

Clarence Milton Carlisle II appeals his convictions for two counts of fraud, as Level 6 felonies; two counts of forgery, as Level 6 felonies; and theft, as a Class A misdemeanor, following a jury trial.  Carlisle presents three issues for our review:

    1.    Whether the State presented sufficient evidence to support venue in Hamilton County.

    2.    Whether the State presented sufficient evidence to support his convictions.

    3.    Whether the trial court erred when it issued a nunc pro tunc entry to correct a typographical error in the sentencing order.

We affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

During the early morning hours of August 15, 2015, Carlisle entered the garage of Jennifer Warr's residence in Carmel and stole her wallet from her purse, which she had left in her vehicle.  Between 11:00 a.m. and noon, Carlisle then used Warr's credit card and a debit card to make unauthorized purchases at a Macy's, a Sears, and a Marsh store in Indianapolis.  At Macy's, Carlisle bought a pair of bright blue Nike Air Max shoes; two Ralph Lauren Polo shirts, one with distinctive black lettering on the front, and one with a white tiger emblem and the word "Polo" on the front; and Ralph Lauren undergarments and socks.  At Sears, Carlisle bought two Amazon Fire television sticks.  And, at Marsh,

Carlisle bought various food and sundries, including two boxes of Nabisco BelVita breakfast biscuits and Degree deodorant.

[3] At approximately noon, Warr's husband received a phone call alerting him to apparent fraudulent activity on a credit card. Warr then looked in her purse and noticed that her wallet was missing. Accordingly, Warr and her husband contacted each of the banks affiliated with the missing credit and debits cards to deactivate them. Shortly thereafter, Carlisle attempted to make two purchases at a Walmart in Indianapolis using Warr's Visa and MasterCard, but those transactions could not be completed.

[4] Two days later, on August 17, Warr contacted the Carmel Police Department to report that her wallet had been stolen. Shortly thereafter, Carmel Police Detective David Kinyon received a tip that Carlisle might be involved in the theft, and Detective Kinyon compared Carlisle's photograph on file with the BMV with surveillance video from the Macy's purchases. Detective Kinyon also found a Facebook page belonging to "Clarence Carlisle" showing a photograph, posted on August 18, showing Carlisle wearing a "shirt and shoes . . . consistent [with the] appearance [and] style [of] two of the items purchased with [Warr's] stolen credit card from Macy's." Tr. Vol. III at 78. Accordingly, Detective Kinyon contacted Carlisle by phone and scheduled an in-person interview for August 21. Carlisle did not attend that interview.

[5] Detective Kinyon then obtained a search warrant for Carlisle's home in Zionsville. Detective Kinyon and other officers executed the search warrant during the evening of August 21 and found the following at the residence:

> one sapphire blue Ralph Lauren Polo shirt, short sleeve, size 2XLT that displayed a tiger head on the right breast and "POLO" on the left breast . . . which was consistent with one of the items purchased using the stolen credit card. . . . [O]ne white Ralph Lauren Polo shirt, short sleeve, size 2XB with "POLO" on the right breast and "RL" on the left breast, consistent with the other shirt purchased with the stolen credit card. . . . [A] pair of Nike Air Max gym shoes, blue in color, men's size 11-1/2 consistent with the shoes purchased on the stolen credit card. Also a package of Ralph Lauren socks, package of Ralph Lauren ribbed tank tops, and one Amazon Fire TV Stick in packaging.

*Id.* at 81. Officers also found "a blue Ralph Lauren Polo shirt . . . size XXL with a gold . . . emblem . . . on the right breast. The Polo logo on the left breast. The number three on each sleeve" which "was consistent with the shirt worn by the suspect seen in all the videos and still images conducting the fraudulent transactions." *Id.* at 83. Officers found distinctive items that Carlisle had purchased at Marsh, including two boxes of BelVita breakfast biscuits and Degree-brand deodorant. In addition, officers found a Pacers baseball hat in Carlisle's car that matched the hat he can be seen wearing in the surveillance video.

[6] The State charged Carlisle with four counts of fraud, as Level 6 felonies; four counts of forgery, as Level 6 felonies; and theft, as a Class A misdemeanor. Prior to trial, Carlisle moved for a change of venue, which the trial court denied

following a hearing. A jury found Carlisle guilty as charged. The trial court entered judgment of conviction only for two counts of fraud, as Level 6 felonies; two counts of forgery, as Level 6 felonies; and theft, as a Class A misdemeanor. And the trial court sentenced Carlisle to an aggregate term of four years executed. The trial court subsequently entered a nunc pro tunc entry that purported to correct a typographical error in the sentencing order. This appeal ensued.

## Discussion and Decision

### Issue One: Venue

[7] Carlisle contends that the State failed to establish venue in Hamilton County.

> Except as otherwise provided by law, criminal actions are to be tried in the county where the offense was committed. Ind. Code § 35-32-2-1; *Kindred v. State*, 540 N.E.2d 1161, 1167 (Ind. 1989). If an offense is committed in Indiana and it cannot readily be determined in which county the offense was committed, trial may be in any county in which an act was committed in furtherance of the offense. *Id.* *If the commission of an offense is commenced in one county and is consummated in another county, trial may be had in either of the counties.*[1] *Andrews v. State*, 529 N.E.2d 360, 363 (Ind. Ct. App. 1988), *trans. denied*.

---

[1] This rule was codified at the former venue statute, Indiana Code Section 35-1.1-2-1, but in 1982, our legislature deleted from that statute subsection (d), which had provided: "If the commission of an offense is commenced in one county and is consummated in another county, trial may be had in either of the counties." The current venue statute is codified at Indiana Code Section 35-32-2-1 and includes no such provision. However, our supreme court has held that the deleted provision "was not requisite for our prior holdings finding venue in any county involved in a chain of related crimes; it merely codified the fact that a crime beginning in one county and ending in another county is committed in both counties." *Davis v. State*, 520 N.E.2d 1271, 1273 (Ind. 1988). And the court cited with approval "cases decided subsequent to the 1982

> It is the State's burden to prove that the offenses charged
> occurred in the county identified in the charging information.
> Venue must be proven by a preponderance of the evidence and
> may be established by circumstantial evidence. *Buzzard v. State*,
> 669 N.E.2d 996, 997 (Ind. Ct. App. 1996).

*Bryant v. State*, 41 N.E.3d 1031, 1037 (Ind. Ct. App. 2015) (quoting *Wurster v. State*, 708 N.E.2d 587, 599 (Ind. Ct. App. 1999)) (emphasis added). The standard of review for a claim that the evidence was insufficient to prove venue is the same as for other claims of insufficient evidence. *Eberle v. State*, 942 N.E.2d 848, 855 (Ind. Ct. App. 2011), *trans. denied*. We neither weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences therefrom which support the conclusion of requisite venue. *Id.*

[8] Carlisle first maintains that the evidence is insufficient to prove that he stole Warr's wallet from her home in Hamilton County. In particular, Carlisle asserts that "the circumstantial evidence that the theft occurred in Hamilton County is so weak that it cannot give rise to a reasonable inference that venue was proper there." Appellant's Br. at 13. Carlisle points out that Warr last used her wallet at a store in Marion County on August 14, and she testified that, when she drove her daughter to an event at 9 or 9:30 a.m. on August 15,

---

revision of the venue statute [that] continue to hold that '[w]here a crime commences in one county and is continued into adjoining counties, then the charge may be filed in any of the involved counties.'" *Id.* at 1274.

she did not check to see if her wallet was in her purse at that time. Carlisle argues that because Warr did not see her wallet after she left the store in Marion County and before she realized it had been stolen, she may have left it at the store on August 14 or dropped it in the parking lot.

[9] But the State presented evidence that Warr's wallet was in her car in her garage when it was stolen. During Warr's trial testimony, the following colloquy occurred:

> A  . . . I normally just keep my purse in the passenger side floor area in my car, and [at approximately noon on August 15,] I went directly there. My wallet was gone. So, yeah.
>
> Q  And so, when was the last time you remember having your wallet?
>
> A  That Friday night, I took the kids to Michael's, and I had it then. And then I didn't leave my house until the next day.
>
> Q  So you're confident you had it overnight?
>
> A  Correct.
>
> Q  And did you--when you were driving to go to your daughter's event [Saturday morning], did you check to see if you had it?
>
> A  I didn't. I didn't need my purse for anything.
>
> * * *
>
> Q  And you recall having your -- you recall having your purse and your cards with you after you left Michael's?

A  Yes.

Q  And you drove home --

A  I drove home.

Q  -- you drove home and you were there until the next day when you took your daughter out to --

A  For cheerleading, yeah.

Q  -- to do that?  So, the purse went missing in between the time your husband put the garage door up and whenever you left to go to Michael's?

A  No, whenever we came back from cheerleading when the credit card company called --

Q  I apologize.

A  -- yeah.

Q  Whenever you left to go to cheerleading?

A  Right.

Q  During that two[-]and[-]a[-]half[-]hour period?

A  Yes.

Q  And during that entire time, that was all in Carmel?

A  Correct.

Tr. Vol. III at 33-46.

[10] We hold that the State proved by a preponderance of the evidence that Carlisle stole Warr's wallet from her home in Hamilton County. Carlisle's contentions on this issue amount to a request that we reweigh the evidence, which we will not do.

[11] Still, while Carlisle acknowledges that where the commission of an offense is commenced in one county and is consummated in another county, trial may be had in either of the counties, he maintains that the Marion County charges should have been tried in Marion County because they "were not so inextricably linked to the theft that they could be properly heard by a jury" in Hamilton County. Appellant's Br. at 15. We disagree. Carlisle's crime spree commenced in Hamilton County with the theft of Warr's wallet and was consummated a few hours later in Marion County with the unauthorized purchase of several items at Macy's, Sears, and Marsh. Given the short duration of the crime spree, and given that the theft of Warr's wallet was the prerequisite for the other crimes, we hold that all of the charges were properly heard in Hamilton County. *See, e.g.*, *Davis*, 520 N.E.2d at 1274 (holding venue for prosecution for rape was proper in either the county where the rape was actually committed or in the county where the plan to rape was commenced and the victim abducted).

### Issue Two:  Sufficiency of the Evidence

[12] Carlisle contends that the State presented insufficient evidence to prove that he was the man who stole Warr's wallet and made the unauthorized purchases with her credit and debit cards. Again, in reviewing a sufficiency of the

evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. *Sharp v. State*, 42 N.E.3d 512, 516 (Ind. 2015). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict, and we will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

[13] Carlisle acknowledges that a perpetrator's identity may be established entirely by circumstantial evidence and logical inferences drawn therefrom, *Bustamante v. State*, 557 N.E.2d 1313, 1317 (Ind. 1990), but he maintains that the surveillance video lacks sufficient detail to support his guilt. He also argues that "the mere unexplained possession" of the recently stolen goods, which, he asserts are "not unique items," is insufficient to implicate him in the crimes. Appellant's Br. at 21-22. We cannot agree with Carlisle's characterization of the evidence and disagree with his contentions on this issue.

[14] The State presented the following evidence to prove that Carlisle perpetrated the charged crimes: surveillance video and still photographs of the man using Warr's credit and debit cards at Macy's, Sears, and Walmart; a photo posted on Facebook on August 18 showing Carlisle wearing a Polo shirt with a white tiger emblem and blue Nike tennis shoes; and Carlisle's possession of several other distinctive items purchased with those cards within one week of the crimes.[2]

---

[2] Carlisle asserts that the purchased items are "not unique" and that his possession of them cannot support his guilt. Appellant's Br. at 22. But, while they were not one-of-a-kind items, the items were distinctive, such

We disagree with Carlisle's description of the surveillance videos and still photographs as insufficiently detailed. To the contrary, our review of that evidence shows relatively clear depictions of the perpetrator's face, skin color, slender build, and other physical characteristics, all of which support a determination that Carlisle is the man depicted therein. That video and photographic evidence, combined with Carlisle's possession of some of the distinctive items purchased with Warr's credit and debit cards within a few days of the theft of her wallet, is sufficient to support his convictions for fraud, forgery, and theft.

### Issue Three: Sentence

Finally, Carlisle contends that the trial court erred when it modified his sentence in a nunc pro tunc order to correct a typographical error. The State agrees and explains as follows:

> By agreement of the parties, the trial court imposed an aggregate four-year sentence in accord with Indiana Code Section 35-50-1-2(d), which limited the aggregate sentence for an episode of criminal conduct for Level 6 felony offenses at four years. The sentencing order, however, contained a typographical error, which read: "Defendant is sentenced on Count 3 to 550 days in the Indiana Department of Correction, *910 days* ordered executed as direct commitment to the Hamilton County Community

---

as a specific flavor of BelVita breakfast biscuits, a specific style and color of Nike shoes, and the Polo shirts. Carlisle is correct that his mere possession of those items, without more, would not be sufficient to support a theft conviction and are not, by analogy, sufficient to support his convictions for fraud and forgery. But here, the surveillance videos and photos combined with Carlisle's possession of the distinctive items within a short period of time and the Facebook photo are sufficient to prove his identity as the perpetrator of the crime spree.

Corrections work release program. To "correct" that error, the
trial court issued a nunc pro tunc order two days later to reflect
that the sentence on Count III was "910 days and not 550 days."

Appellee's Br. at 20 (emphasis original).

[16]    As the parties point out, the trial court's error in the nunc pro tunc entry is
obvious. In correcting the typographical error, the trial court made a second
typographical error when it ordered executed 910 days on a 550-day sentence.
Given the applicable sentencing cap under Indiana Code Section 35-50-1-2(d)
(episode of criminal conduct) and the parties' agreement, we vacate the nunc
pro tunc entry. On remand, the trial court shall correct the sentencing order
with respect to Count III to state that all 550 days of the sentence shall be
ordered executed as direct commitment to the Hamilton County Community
Corrections work release program.

[17]    Affirmed in part, reversed in part, and remanded with instructions.


Bailey, J., and May, J., concur.