## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2017, 10:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

T. Alexander Newman
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Willie Edward Williams, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 28, 2017 <br><br> Court of Appeals Case No. 48A02-1608-CR-2016 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Angela G. Warner Sims, Judge <br><br> Trial Court Cause No. 48C01-1606-F1-1188 |

**Najam, Judge.**

## Statement of the Case

Willie Edward Williams appeals his convictions for two counts of child molesting, one as a Level 1 felony and one as a Level 4 felony, and his adjudication as a habitual offender following a bench trial. Williams presents a single issue for our review, namely, whether the State presented sufficient evidence to support his convictions. And we raise one issue *sua sponte*, namely, whether Williams' convictions violate the prohibition against double jeopardy. We affirm in part and reverse in part.

## Facts and Procedural History

On November 11, 2015, Williams, who was forty-two years old at the time, was visiting at his cousin M.C.'s house in Anderson. M.C. lived there with her mother, G.C., and M.C.'s children, including her then-thirteen-year-old daughter T.C. During the late afternoon, M.C. left the house to go shopping for food for a party to celebrate her friend K.N.'s birthday at K.N.'s house next door. At approximately 4:30 or 5:00 p.m., Williams and T.C. were alone together in the living room, and Williams sat next to T.C. on a couch. Williams "brushed up on" T.C. Tr. at 76. T.C. told Williams to move, and she "moved him" away. *Id.* Williams "kept brushing up" against T.C. *Id.* at 77. Williams then "stuck his hands in [T.C.'s] pants and then he stuck his finger in [T.C.'s vagina]." *Id.* at 79. T.C. then "got up[,] and [she] was crying[,] and [she] ran next door" to find her grandmother at K.N.'s party. *Id.* at 81. T.C. was crying and visibly upset when she arrived at the party, but she would not

tell anyone what had happened. When M.C. arrived at the party, she found T.C. crying, but T.C. did not tell her what had happened.

[3] In December 2015, T.C. was placed at the Youth Opportunity Center ("YOC") after she engaged in a fight at school. And on January 13, 2016, T.C. told Shelby Parker, a unit manager at YOC, that Williams had stuck a finger in her vagina. Parker contacted the Department of Child Services ("DCS") to report the incident, and DCS began an investigation into T.C.'s allegation. During a forensic interview on January 21, T.C. stated as follows: while she could not remember the date of the molestation by Williams, she stated that it "happened in the fall" when it was "cold outside"[1] Defendant's Ex. 2; she had had a doctor's appointment earlier the day it happened; and T.C.'s mother had gone to the grocery store and her grandmother was at a friend's house next door at the time of the molestation.

[4] The State charged Williams with two counts of child molesting, one as a Level 1 felony and one as a Level 4 felony. The State also alleged that Williams was a habitual offender. At the ensuing bench trial, the State presented four witnesses: M.C., T.C.'s neighbor K.N., Parker, and T.C. The witnesses' testimony corroborated T.C.'s allegation that the molestation had occurred on November 11, 2015, when a large party was going on at K.N.'s house. But the witnesses' testimony was inconsistent regarding whether Williams was at T.C.'s

---

[1] Apparently, Parker told someone at DCS that T.C. had told her that the incident occurred in February 2015.

house when M.C. left for the store, how long M.C. was at the store, and what time Williams showed up at the party. In addition, T.C.'s testimony differed from the DCS reports of its investigation regarding the date of the incident and what Williams had been doing before he stuck his hand down T.C.'s pants. At the conclusion of the bench trial, the trial court found Williams guilty as charged, and Williams admitted to being a habitual offender. The trial court entered judgment accordingly and sentenced Williams to an aggregate sentence of forty-five years executed. This appeal ensued.

## Discussion and Decision

[5] In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. *Sharp v. State*, 42 N.E.3d 512, 516 (Ind. 2015). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the judgment, and we will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

[6] Williams' sole contention on appeal is that T.C.'s testimony was incredibly dubious and cannot support his convictions. The incredible dubiosity rule allows an appellate court to "impinge on the jury's responsibility to judge the credibility of the witnesses only when it has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (citations omitted). In *Moore*, our supreme court clarified that "the appropriate scope of the

incredible dubiosity rule as utilized in Indiana and other jurisdictions requires that there be: 1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Id.* at 756.

[7] Here, Williams' argument focuses on the inconsistencies between the DCS reports on its investigation into T.C.'s allegations, including interviews with T.C., and T.C.'s trial testimony, as well as the inconsistencies in the trial witnesses' testimony regarding the timeline of certain events. But Williams cannot satisfy the first prong of the *Moore* test because four witnesses testified at trial. And Williams cannot satisfy the third prong because the State presented circumstantial evidence to support T.C.'s testimony, namely, M.C.'s and K.N.'s testimony that T.C. arrived at the party on November 11, 2015, crying and upset. Because Williams cannot satisfy the first and third prongs of the *Moore* test, we need not address the second prong. Williams' contention on this issue is without merit, and the State presented sufficient evidence to support his convictions.

[8] That being said, we raise another issue *sua sponte*, namely, whether Williams' convictions violate double jeopardy principles. Entry of conviction for both an offense and a lesser-included offense "is impermissible under both state and federal double jeopardy rules." *Wentz v. State*, 766 N.E.2d 351, 359-60 (Ind. 2002). An offense is an inherently lesser included offense when it may be established by proof of the same material elements or less than all the material elements that define the "greater" crime charged. *Smith v. State*, 881 N.E.2d

1040, 1046 (Ind. Ct. App. 2008). Stated another way, an offense is an inherently lesser included offense "if it is impossible to commit the greater offense without first having committed the lesser." *Bush v. State*, 772 N.E.2d 1020, 1023-24 (Ind. Ct. App. 2002) (citing *Zachary v. State*, 469 N.E.2d 744, 749 (Ind. 1984)), *trans. denied*. Of course, "if the evidence indicates that one crime is independent of another crime, it is not an included offense." *Wilhelmus v. State*, 824 N.E.2d 405, 416 (Ind. Ct. App. 2005) (citing *Ingram v. State*, 718 N.E.2d 379 N.E.2d 381 (Ind. 1999)). Thus, whether an offense is included in another "requires careful examination of the facts and circumstances of each particular case." *Iddings v. State*, 772 N.E.2d 1006, 1017 (Ind. Ct. App. 2002), *trans. denied*.

[9] Here, Williams was convicted of child molesting, as a Level 1 felony, and child molesting, as a Level 4 felony. Indiana Code Section 35-42-4-3 (2017) provides in relevant part as follows:

> (a) A person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct commits child molesting, a Level 3 felony. However, the offense is a Level 1 felony if:
>
> > (1) it is committed by a person at least twenty-one (21) years of age[.]
>
> * * *
>
> (b) A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual

desires of either the child or the older person, commits child molesting, a Level 4 felony.

[10] Child molesting, as a Level 4 felony, is a lesser-included offense of child molesting, as a Level 1 felony. And evidence of the same act of molestation, namely, Williams' placing his finger in T.C.'s vagina on a single occasion, was used to support both convictions. We hold that Williams' convictions violate the prohibition against double jeopardy, and we reverse his conviction for child molesting, as a Level 4 felony. Because the trial court ordered his sentences to run concurrently, and because the trial court enhanced the Level 1 felony for the habitual offender adjudication, there is no need for resentencing.

[11] Affirmed in part and reversed in part.

Riley, J., and Bradford, J., concur.