## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 27 2017, 10:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Peter D. Todd
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James G. Balser, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 27, 2017

Court of Appeals Case No.
20A03-1608-CR-2002

Appeal from the Elkhart Superior Court

The Honorable Charles Carter Wicks, Judge

Trial Court Cause No.
20D05-1503-F6-179

**Najam, Judge.**

## Statement of the Case

James Balser appeals his conviction for theft, as a Class A misdemeanor, following a jury trial. Balser presents a single issue for our review, namely, whether the State presented sufficient evidence to support his theft conviction. We affirm.

## Facts and Procedural History

During the afternoon of December 26, 2014, Ethan Walsh and his roommate went to a Taco Bell restaurant in Middlebury. The restaurant abuts a convenience store called the Pak-A-Sack and a gas station. Inside Taco Bell, Walsh paid for his meal with cash and put his wallet back in his pocket. While Walsh was inside the Taco Bell, Balser arrived at the gas station and parked his car next to Walsh's truck. Balser's passenger, Jasmine Rodzankas, got out of the car and went inside the Taco Bell. Rodzankas stood in line behind Walsh. After Walsh got his food, he and his roommate left and went home.

After Walsh got home, he realized that his wallet was missing. He searched his house and truck but could not find it. Walsh drove back to Taco Bell and asked the employees there and at Pak-A-Sack whether anyone had turned in a wallet, but no one had found it. Walsh checked the ground where he had parked his truck, but he did not find his wallet. Because Walsh had a MasterCard debit card in his wallet, he called the issuing bank to cancel the card, but the bank was closed.

[4]     That same evening, Crystal Draper stopped by Balser's residence and asked Balser whether he would drive her to a store to buy cigarettes for her mother. Balser agreed, and Draper rode in the front passenger seat of Balser's truck while he drove to a nearby gas station. While they were en route, Draper saw a debit card sitting on the truck's center console ("the debit card"). Draper "made mention" of the card to Balser, but she did not ask him where he had gotten it. Tr. Vol. II at 68. When they arrived at the gas station, Draper went inside and used the debit card to buy cigarettes, including some for Balser. Draper then used the debit card to buy gas for Balser's truck. Draper saw that Balser's name was not on the debit card.

[5]     On the drive home, Draper asked Balser whether he would follow her in her van to a gas station to get gas, and Balser agreed. Draper then drove her van to a different gas station, and Balser followed in a car.[1] After they arrived at the gas station, Draper used the debit card to buy gas for her van and also for the car Balser was driving. Draper also used the debit card to buy cigarettes for Balser and for herself, and she bought transmission fluid and antifreeze. Balser filled two gas cans with gas.[2] Draper then gave the debit card back to Balser.

---

[1] Balser worked on cars at his house, and Draper was not sure whether this car was owned by Balser or one of his customers.

[2] Draper "swiped" the debit card to pump the gas and started the pumping in both vehicles. Balser continued to use one of the pumps to fill the gas cans.

The next day, Walsh discovered that someone had made unauthorized charges with his debit card the night before, and he filed a police report. During the ensuing police investigation, officers reviewed surveillance videos and identified Draper as the woman using the debit card to buy gas and cigarettes. During a subsequent interview, Draper stated that Balser had given her the debit card. A Middlebury Police Officer then made two appointments to talk to Balser, but he failed to show up for either appointment.

The State charged Balser with six counts of fraud, as Level 6 felonies, and one count of theft, as a Class A misdemeanor. A jury found him guilty as charged. The trial court entered judgment of conviction and sentence accordingly. This appeal ensued.

## Discussion and Decision

Balser contends that the State presented insufficient evidence to support his conviction for theft, as a Class A misdemeanor.[3] In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. *Sharp v. State*, 42 N.E.3d 512, 516 (Ind. 2015). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the judgment, and we will affirm the conviction if there is probative evidence from

---

[3] Balser does not challenge any of his other convictions on appeal.

which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

[9] To prove theft, as a Class A misdemeanor, the State was required to show that Balser knowingly or intentionally exerted unauthorized control over Walsh's wallet,[4] with intent to deprive Walsh of any part of its value or use. Ind. Code § 35-43-4-2 (2017). Balser's sole contention on appeal is that, "[o]ther than [his] use of Walsh's [debit] card," there is no evidence that Balser ever had possession of Walsh's wallet or intended to deprive Walsh of the value or use of the wallet. Appellant's Br. at 6. We cannot agree.

[10] While Balser is correct that the State did not present direct evidence that he stole Walsh's wallet, the State presented ample circumstantial evidence to prove the theft. As our supreme court has held,

> the mere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft. Rather, such possession is to be considered along with the other evidence in a case, such as how recent or distant in time was the possession from the moment the item was stolen, and what are the circumstances of the possession (say, possessing right next door as opposed to many miles away). In essence, the fact of possession and all the surrounding evidence about the possession must be assessed to determine whether any rational juror could find the defendant guilty beyond a reasonable doubt.

---

[4] The charging information alleged that Balser stole Walsh's wallet, as opposed to Walsh's debit card.

*Fortson v. State*, 919 N.E.2d 1136, 1143 (Ind. 2010).

[11] Here, the State presented evidence that Balser's possession of Walsh's debit card, which Walsh kept in his wallet, was unexplained and occurred within a few hours of Walsh having lost his wallet at the Taco Bell/gas station. Balser did not present evidence to explain his possession of the debit card. When Walsh last saw his wallet, he was paying for his food at Taco Bell, and Balser's passenger, Rodzankas, was standing in line directly behind him. Also at that time, Balser was parked next to Walsh's truck, and, shortly after that, Balser gave Draper the debit card to purchase gas and cigarettes for Balser. We hold that the evidence is sufficient to support Balser's theft conviction. *See id.*

[12] Affirmed.

Riley, J., and Bradford, J., concur.